Stella Rarus, Plaintiff-Appellee, v. J. C. Penney Company, a Corporation, Defendant-Appellant.

Gen. No. 11,678.

Second District, First Division.
January 18, 1963.

 ██ 

Pool & Langer, of Ottawa, for appellant.

Peter F. Ferracuti, of Ottawa, for appellee.

DOVE, J.

On August 15, 1960, plaintiff, while shopping in the retail department store of the defendant in LaSalle, Illinois, slipped and fell. To recover for the alleged injuries which she sustained as a result of this fall, this action was brought. A jury trial resulted in a verdict in favor of the plaintiff for $1200. The trial court reserved its ruling on defendant's motion for a directed verdict at the close of the evidence and subsequently denied defendant's post-trial motion for judgment notwithstanding the verdict and from a judgment of the trial court rendered upon the verdict, defendant appeals.

The original complaint consisted of two counts. By the second count plaintiff's husband sought to recover damages for the loss by him, of plaintiff's services. This count was dismissed by the husband prior to the trial. The only charge of negligence contained in the complaint which was submitted to the jury alleged that the defendant carelessly, negligently and improperly failed to remove a wax substance that had been placed on the floor of its store by one or more of the agents, employees or servants of said defendant and charged that defendant allowed the same to remain on said floor, causing a substantial slippery condition. By its answer, the defendant denied that it maintained

its premises in a careless or negligent manner, denied that it failed to remove any wax substance from its floor, denied that it improperly allowed any such wax substance to remain on its floor, denied that any such wax substance was on the floor or that the floor was in a slippery condition.

The record discloses that defendant's store consisted of three floors. These floors were connected by a passenger elevator. On the basement floor the merchandise was displayed on counters. Between these counters were aisles arranged so that customers and store personnel could walk in the aisles which separated the counters. There was an aisle leading to the ladies restroom near the counter where the curtains were displayed. Plaintiff fell in this aisle. The surface of the basement floor was covered by square blocks of asphalt tile. Asphalt tile, in an untreated state, has a porous surface and when this asphalt tile was first laid, it was treated with a sealer to fill the pores. After the asphalt tile was laid, it was also treated with a material known as Sole-Grip. This is a preservative intended to protect the floor from wear. It is a slip resistant water emulsion, and formulated for use on asphalt tile floors. It was applied by the defendant in accordance with the instructions of the manufacturer as printed on the container in which it was purchased. Before the Sole-Grip is applied, the floor is carefully cleaned with suds and warm water. It is the duty of the maintenance man of the defendant to go over the floors of the store with a dry yarn mop every day. On occasion certain sections and portions of the floor that receive heavy wear, such as aisles are given an additional treatment of Sole-Grip in order to preserve them. In applying the Sole-Grip for these purposes, about one pint of Sole-Grip is mixed with four or five gallons of water.

On the morning of August 15, 1960, plaintiff, then sixty-seven years of age, went to defendant's store to shop between ten and eleven o'clock. After entering

she went to the second floor to look at some dresses and then took the elevator to the basement floor to look at some curtains. This is plaintiff's version, as abstracted, of what happened: "I got off the elevator in the basement and went to the curtains and drapes. I looked at the drapes because they are in the same aisle. I was going to the curtains and I slipped there and fell. The floor there was inlaid asphalt, and it was slippery and shiny. I slipped on it. It was as I was walking by one of the counters where the curtains are, when I slipped and fell and went on my knees with my hands on the floor. I tried to get up. One of the clerks came over and I tried to get up but I fell backwards and hit the floor. I had a big bump on my head. My back and side hit the floor as I fell backwards and my arm was bruised. My head was spinning and I had a buzz in my head. Then I was unconscious and I don't know what happened."

As a result of her fall, plaintiff sustained a slight brain concussion, was hospitalized for twenty days and thereafter remained in bed at her home for a month. She testified that after she was able to get up she saw her physician every two weeks until his death which occurred in the fall of 1961. At the time of the trial which occurred in April, 1962, she testified she had a spinning and a continual buzz in her head, suffered from headaches and took pills "just about everyday" to relieve her pain. Her hospital bill amounted to $438.80 and her physician's bill aggregated $166.00. Plaintiff testified that the shoes she had on when she slipped and fell were walking shoes with a "Cuban" heel, a little over an inch in height.

Irma Danokas was called as a witness for the plaintiff and testified that she was employed by defendant as a clerk and upon the day in question was in the basement, observed plaintiff in the aisle where she fell but did not see her fall; that she went to assist her just as the plaintiff was getting up; that plaintiff got up

and was leaning on the curtain counter; that she asked the plaintiff how she felt and plaintiff replied "ok, that she would be alright"; that another clerk was there and said she would get a chair. This witness then testified that plaintiff "sort of fainted, she was not right in the same place where she had first fallen but was a little further on. She sort of went around the corner of the curtain counter. There was nothing there on the floor for her to slip on. There was no object or anything around there and the floor wasn't slippery. I did not see any skid marks on the floor where she fell. I examined the place where she fell because that is the first thing you think about in a situation like that, trying to see what made her fall. However, I could not see anything. I had worked down in the basement there for about three years before this happened. During all the time I have worked there, I have never had occasion to slip on that floor myself."

Dixon v. Hart, 344 Ill App 432, 101 NE2d 282, is cited and relied upon by both parties to sustain their respective contentions. In the course of its opinion the court, in that case said: (p 436), "A store owner may treat his floors with wax or oil or other substance in the customary manner without incurring liability unless he is shown to be negligent in the materials which he uses or in the manner of applying them." Counsel for the respective parties agree that this is the rule to be applied in the instant case. The questions which then arise are whether, in this record is there any evidence which shows that the defendant was negligent in its choice of Sole-Grip as a floor preservative or was it negligent in the method in which it applied this substance to the basement floor where plaintiff fell?

Plaintiff produced at the trial and introduced in evidence without objection, a five-gallon container of Sole-Grip. In the description contained on the can, it was stated that "Sole-Grip is a water-emulsion, slip resist-

ant wax, formulated for use on all resilient, composition and sealed wood floors and for use on asphalt tile, rubber tile, vinyl" and other types of floors and is listed under re-examination service of Underwriter's Laboratories, Inc., and is classified as a slip resistant. In this record there is no evidence that it was not slip resistant.

The directions contained on the can also outlined the method for applying Sole-Grip and the evidence shows that defendant followed such directions in its use and application. There is no evidence in the record which suggests that defendant was negligent in the manner in which the Sole-Grip was applied. What the record also discloses is that defendant chose a material which was designed for use upon the type of floor upon which it was used and that this material is expressly classified as slip resistant.

Counsel for appellee state that the evidence in this case discloses that a portion of the basement floor was waxed or oiled more often than other portions and with a different dilution of Sole-Grip and such evidence supports plaintiff's charge of negligence and is sufficient to sustain this judgment. The complaint charged that defendant failed to remove a wax substance that it had placed on its floor and had allowed such substance to remain on the floor causing a slippery condition. The evidence is that defendant did not place, on its floor, any wax substance: that it had no knowledge of any such substance being on its floor and the weight of the evidence is that the floor was not slippery at the time complained of.

Plaintiff did testify that as she was walking toward the curtain counter she slipped in the aisle leading to the curtain counter and fell and that the floor on which she fell was an asphalt floor and was slippery and shiny. In Dixon v. Hart, 344 Ill App 432, 101 NE2d 282, the court discusses the sufficiency of this type of evidence and says (p 437) "Does testimony that a floor

47

was 'polished' or 'slick' without more, as was shown by plaintiff in this case, establish that the defendant was negligent in his choice or application of a floor dressing, or that the floor was dangerous for use by the public? We think not. Such descriptions are hopelessly lacking in precision of meaning. What is 'slippery' to one person might not be 'slippery' to others. And what is 'slick' to a person wearing one type of shoe might not seem 'slick' to him if wearing another kind of shoe. We do not feel that such testimony furnishes the jury with any real evidence of a probative value in weighing the defendant's conduct against the care required of him by the law governing such cases . . . Nor can we agree with the plaintiff's contention that the mere showing that a floor has been polished, together with some evidence of its being 'slick', is at least sufficient to require that the store owner's liability be weighed by the jury in any case. It is difficult to see how the ends of justice would be served by permitting a jury to speculate and conjecture as to whether the condition of the floor, as shown by such evidence caused plaintiff to fall. . . . Extrinsic evidence of a character more clear and convincing than plaintiff's completely subjective verbal characterization of the floor as 'slick', must be shown before a jury could fairly and intelligently weigh the owner's conduct in the care of his floors and its causal relationship to plaintiff's fall."

Stephens v. Sears Roebuck & Company, 212 F2d 260 was an action brought by Ruth Stephens to recover damages for injuries she received in defendant's store which she had entered to make a purchase. Plaintiff, age 62, with a friend had gone to the washroom of the store located on the second floor. She testified that when she went into the washroom she noticed that the floor was "very slick and shiny" and that she thought the floor had been waxed. She stated that she was walking across the floor of the washroom toward the washbasin, when she suddenly, "seemed to hit a greasy

48

or slick spot. My feet flew out from under me, and I hit the floor." The friend of the plaintiff testified that she observed that the floor was "shiny and slick." According to the testimony of witnesses for defendant the floor had not been waxed and there were no grease spots on it and no foreign substance where plaintiff fell. The evidence disclosed that the floor was cleaned every morning with "Octo-Solve" which contains no wax or oil. "Octo-Solve" was mixed with water and after using it the floor was mopped up with clear water. In affirming a judgment for the defendant the court held there was no evidence that defendant was negligent in maintaining the floor or that there was a dangerous condition existing on the washroom floor when plaintiff fell. In the course of its opinion the court stated that the mere fact that plaintiff fell does not prove that the floor was in a dangerous condition, and went on to observe that plaintiff's testimony that she seemed to hit a greasy or slick spot, fell short of evidence that there was a greasy or slick spot, and that testimony that the floor was "slick", "shiny" or "slippery" fails to show a dangerous condition, as what is "slippery" to one person might not be "slippery" to others.

In Burg v. Great Atlantic and Pacific Tea Co., 256 F2d 613 the trial court directed a verdict for the defendant and the Circuit Court of Appeals of the Seventh Circuit reversed the judgment entered on that verdict. It appeared that plaintiff was in the store of defendant for the purpose of making a purchase and while proceeding up an incline just beyond the entrance she slipped and fell and sought to recover damages for the injuries she sustained. In the course of its opinion the Circuit Court of Appeals said that it was not necessary for the plaintiff to establish what actually caused her to fall if from the circumstances revealed by the evidence, it would be reasonable for the jury to infer that the fall was occasioned by the fact that the incline

was waxed. The court further stated that it is not negligence to apply wax to a floor unless there is some evidence that it was improperly done; that waxing of floors is too common a practice to constitute negligence in the absence of evidence tending to show some positive negligent act or omission. The court in the Burg case held that the wax was applied to asphalt tile on an incline and whether to do so evidenced a lack of reasonable care on the part of the store owner is a factual determination which should be left to a jury.

As said in Burns v. Goldammer, 37 Ill App2d 105, 186 NE2d 97 there is a wealth of cases in Illinois involving customers and patrons injured by slipping on foreign substances in stores and other public places. What these cases hold is that the proprietor owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. (Donoho v. O'Connell's Inc., 13 Ill2d 113, 148 NE2d 434; Olinger v. Great Atlantic and Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47.)

In the instant case the complaint charges "that the defendant, through its agents, employees and servants failed to remove a wax substance that had been placed on said floor by one or more of the agents, employees or servants of defendant and allowed to remain on said floor, causing a substantially slippery condition." The evidence does not tend to prove this allegation.

The trial court, therefore, erred in denying defendant's post-trial motion for judgment and the judgment appealed from must be reversed.

Judgment reversed.

McNEAL, P. J. and SMITH, J., concur.