Novella Herron and Patricia Herron, a Minor, by Her Mother and Next Friend, Novella Herron, Plaintiffs-Appellees, v. Yellow Cab Company, a Corporation, Defendant-Appellant.

Gen. No. 50,197.

First District, Third Division.

April 21, 1966.

Jesmer and Harris, of Chicago (Robert Jesmer and Henry W. McGee, Jr., of counsel), for appellant.

Gomberg & Missner, of Chicago (Sidney D. Missner and John M. Murtaugh, of counsel), for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from judgments in favor of plaintiffs for personal injuries sustained when they fell off the rear seat of defendant's taxicab as the taxicab came to a sudden stop in order to avoid striking a boy riding a bicycle.

Defendant contends that plaintiffs' evidence, together with all reasonable inferences to be drawn therefrom in its aspect most favorable to plaintiffs, fails to establish that the defendant was negligent, and that plaintiffs' evidence of injury was palpably false and should have been disregarded.

Plaintiffs, Novella Herron and Patricia Herron, a minor, on April 26, 1961, were passengers in a taxicab owned and operated by the defendant, a common carrier of passengers for hire.

Plaintiffs' evidence showed that Novella Herron and her daughter, Patricia Herron, entered a Yellow Cab on Harrison Street and the cab proceeded west on Harrison Street in the city of Chicago. Her daughter had obtained "a shot" at the Cook County Hospital. The daughter

had been suffering from pneumonia. Novella Herron was seated in the right rear of the taxicab and her daughter was seated beside her. The daughter, Patricia, was three years old at the time of the accident. There are stop and go lights on the corner of Harrison and Ogden. At the corner of Ogden the cab suddenly stopped while it was still at the intersection of Ogden and Harrison. The plaintiff, Novella Herron, testified that "immediately after the stop, I and my little girl were on the floor of the cab. My little girl was laying on the left hand side of the taxicab and I went down on my knees to the floor of the cab."

The cabdriver testified that he had picked up the plaintiffs at the County Hospital at a taxicab stand. The mother told him to go to Grenshaw and he proceeded west on Harrison. As he approached Ogden Avenue he noticed the light was green for westbound traffic on Harrison Street. He pulled into the center of the intersection and stopped, waiting for traffic to pass in order to make a left hand turn at Ogden to go southwest. A boy with a bicycle started across Ogden from the center of the intersection just as the cabdriver stepped on the gas. The cabdriver testified that he proceeded two or three inches before he stopped. He also testified that he could not have been going over a couple of miles, or no faster than five miles, an hour. When he first saw the boy he was close to the intersection. There is a safety island at this intersection. There is a pole in the middle and one must go around the pole to make the turn on Ogden. The boy was facing west. He did not come into contact with the boy. A couple of feet separated the taxicab and the boy when the cabdriver stopped. He testified that when he stopped the cab, the child slipped off the seat and that he took her with one arm and put her back on the seat. He also testified that the mother was sitting in the cab and that he did not see the mother

on the floor. When the cabdriver first saw the boy on the bicycle he was in the crosswalk going west and was near the post in the middle of Ogden Avenue at the south curb line of Harrison. Just as the cab started to make a left turn the driver looked to the left. He was watching eastbound traffic and when it cleared he turned to the left and saw the boy on the bike. The cabdriver testified that it seemed as if the boy had been waiting. He mounted the bike and the cabdriver saw his feet getting on in the center of the intersection. The wheels of the bicycle and the wheels of the taxicab were moving when the cabdriver first saw the boy. The cabdriver said that when he saw the boy he stopped and that the boy was near the post when he first saw him. The cabdriver moved his cab two feet and then applied his brakes. He testified that he could not have been going more than five miles an hour. He did not get out of the cab and he did not speak with the boy. The boy had the green light. He was going west on Harrison. The cabdriver also testified that "after I hit the brake the car traveled two or three inches." He did not warn his passengers that he was putting on his brakes.

Plaintiff Novella Herron in her testimony stated that she told the cabdriver that Patricia, her daughter, was hurt and that the driver had asked the boy if he was hurt and then got back into the cab and asked about Patricia, her daughter.

The defendant cites the case of Dixon v. Hart, 344 Ill App 432, 101 NE2d 282, in support of the argument that the word "sudden" used in conjunction with stop does not describe the movement of defendant's vehicle in such a way as to permit the trier of fact to conclude that the defendant was negligent. In the Dixon case, supra, action was brought for injuries sustained by a housewife who entered defendant's store where her left foot slipped and she fell, and the plaintiff was assisted to a chair 25 to 30 feet from where she fell at which spot

she rubbed her hand over the floor and found it "slick." The court in that case discussed the question as to whether testimony that a floor was "polished" or "slick" without more, established that the defendant was negligent in his choice or application of a floor dressing, or that the floor was dangerous for use by the public. The court concluded in that case that the plaintiff had not met the burden required of her because what is "slippery" to one person might not be "slippery" to others, and what is "slick" to a person wearing one type of shoe might not seem "slick" to him if wearing another kind of shoe. The court held the evidence in that case standing alone would not require the store owner's liability to be weighed by a jury, especially in view of the fact that the condition of the defendant's floor as being "slippery" and "slick" was based upon a part of the floor 25 or 30 feet away from the accident.

Defendant also relies upon the case of Rarus v. J. C. Penney Co., 39 Ill App2d 42, 187 NE2d 529. This case also involved injury from a fall on a floor that was described as being "slippery and shiny." The court in that case held that it was not negligence to apply wax to a floor unless there is some evidence that it was improperly done and that waxing of floors is too common a practice to constitute negligence in the absence of evidence tending to show some positive negligent act or omission. We are of the opinion that those cases are not controlling here.

In the case of Lazarus v. Friel, 331 Ill App 552, 73 NE2d 647, plaintiff was standing one step above the platform where the motorman stands on a streetcar. The streetcar was slowing down and was coming to a stop when it jerked three or four times and plaintiff was thrown off balance and slipped down on the platform near the motorman. The plaintiff also testified that the floor of the platform was wet. The defendants in that case contended that no negligence on their part was

proved. The court in that case, relying on the authority of Kaldunski v. Chicago City Ry. Co., 250 Ill App 475, held that it is settled in this state that where there is an unusual or extraordinary lurch or jerk of the car upon which a person is riding as a passenger and, by reason thereof, a person is thrown down, it becomes a question of fact for the jury as to whether or not the accident was caused by the negligent operation of the car or train.

In Heineke v. Chicago Rys. Co., 279 Ill 210, 116 NE 761, the court said at page 213:

> "The jerk or sudden stop and lurch of the car is shown by the evidence in the record to have been the controlling and proximate cause of defendant in error's injury. The operation of the car was entirely within the control of plaintiff in error's servants, and a sudden jerk or lurch of the character disclosed by the evidence, being a cause within the control of the carrier, causes to arise a presumption of negligence on the part of the carrier and was sufficient upon which to submit to the jury the question of negligence."

In Hirshberg v. Cummings, 324 Ill App 62, 57 NE2d 284, the plaintiff entered at the front of the car, walked back to the middle where she paid the conductor her fare and before she had time to be seated, *the car suddenly stopped,* causing her to be thrown to the floor and severely injured. The defendant there contended that the court should have directed a verdict in their favor. The evidence in that case further showed that the motorman was driving at a speed of about 25 miles an hour and a truck backed out of the alley on the north side of the street; that he sounded his gong, threw on the brakes and stopped the streetcar as quickly as possible; that the lady fell as the motorman stopped the streetcar. The court on page 67 said:

82

"Upon a careful consideration of all the evidence we are of opinion that all reasonable minds would not reach the conclusion that there was no negligence on the part of the motorman and in such a situation the question of negligence is one of fact for the jury. Louthan v. Chicago City Ry. Co., 198 Ill App 329; Bale v. Chicago Junction Ry. Co., 259 Ill 476; Kelly v. Chicago City Ry. Co., 283 Ill 640. The jury had a right to weigh the testimony of the motorman and of the other witnesses."

 Likewise, in the case before us, after considering all of the evidence as to liability, we cannot say that all reasonable minds would reach the conclusion that there was no negligence on the part of the defendant, and that the question of negligence in such a situation was one of fact for the trier of the facts, who in this case was the trial judge. If the driver of the cab was as close to the boy on the bicycle as he testified to, he should have been able to see him before starting the cab. The boy on the bicycle was crossing the street at the cross-walk and had the green light. The cabdriver was turning left off of Harrison to go southwest on Ogden. The trier of the fact in this case could well have concluded that the defendant's driver was negligent in. failing to look back to the left before making his turn to see if anyone was crossing Ogden in the crosswalk with the light, as was the boy on the bicycle. The trial judge also could have concluded that the driver was negligent in stopping his cab within two or three inches after he applied the brakes without warning to the passengers while the cab was traveling five miles per hour.

██ It has been repeatedly held that the determination of the probative value of the evidence and the conclusions to be drawn from it lie within the province of the trier of the fact, and that an appellate court will not substitute its judgment for that of the trier of the fact

unless the evidence is clearly insufficient to support that finding.

The defendant next contends that the plaintiffs' evidence of injury was palpably false and should have been disregarded. A judgment was entered in the trial court in the amount of $800 in favor of plaintiff, Patricia Herron, a minor, and in the amount of $700 in favor of Novella Herron, the mother. Under this point the defendant attacks the testimony of the doctor. The doctor had testified that on the day Patricia Herron, a minor, was admitted to the hospital he examined her and found a slight hematoma of the skull, ecchymosis of the chest and back, diffused rales of the lungs, weakness, dizziness, nausea, vomiting, a cough and a temperature. In addition she was suffering from bronchial pneumonia. He further testified that a parenzyme injection was given to absorb the blood clots, hematomas and the ecchymosis.

The defendant, in cross-examination of the doctor, referred to the doctor's deposition taken on May 8, 1963. There were many inconsistencies between the answers given at the deposition hearing and the testimony of the doctor at the trial of the case. The doctor explained this by stating that he had brought the wrong records to the deposition. However, at the deposition the doctor stated that Patricia had been in a Yellow Cab that stopped suddenly and that was how she sustained the injuries.

Again, with respect to the plaintiff, Novella Herron, the doctor testified that her main complaints were pains in the lower back, aggravated by active or passive motion. The x-rays were all negative. All that he noted was a slight tenderness in the lower back and the subjective complaints of the patient. The facts, however, showed that Patricia Herron was in the hospital for eight days with a hospital bill of $256.50 and a doctor bill of $160. Novella Herron testified to twenty visits to the doctor, the rubbing of her arm with a liquid furnished

by the doctor; her inability to do her housework completely for three weeks, and partly for some time thereafter. Her doctor bill was $131.

The trial judge observed the witnesses while testifying, their demeanor and their candor or lack of candor, and was in a far better position to determine the credibility of the witnesses than is an appellate court, and for that reason the appellate court will not attempt to take over the function of the trier of the facts in determining the credibility of the witnesses. The trial court after hearing the witnesses for the plaintiffs concluded that their testimony was credible and such finding will not be disturbed by us.

As to the question of damages, it cannot be said that they are excessive in this case. Furthermore, the question of damages is purely one of fact for the jury or other trier of the facts. Lazarus v. Friel, 331 Ill App 552, 73 NE2d 647. And where it is not claimed or shown that the amount of the verdict or judgment clearly indicates it was the result of prejudice or passion on the part of the trier of the facts, the award should not be disturbed upon review. Ford v. Friel, 330 Ill App 136, 70 NE2d 626.

Judgments affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.