Elizabeth G. Halpin, Plaintiff-Appellee, v. Pekin Thrifty Drug Co., Inc., an Illinois Corporation, Defendant-Appellant.

Gen. No. 66–10.

Third District.

January 30, 1967.

Rehearing denied March 9, 1967.

Cassidy & Cassidy, of Peoria, for appellant.

Trager & Trager, and James A. Cummings, of Peoria, for appellee.

STOUDER, P. J.

This is an appeal from a judgment on a jury verdict in the Circuit Court of Tazewell County in the amount of $27,500 for Plaintiff, Elizabeth G. Halpin against Defendant, Pekin Thrifty Drug Co., Inc. Defendant appeals from the order of the trial court denying its post-trial motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The material facts are essentially undisputed. On the date of the accident, May 12, 1962, Defendant was the owner and operator of a drugstore located in Pekin, Illinois. Plaintiff, while a customer at the drugstore fell and was injured. Plaintiff had entered the drugstore for the purpose of having a prescription for her father filled. She had obtained the prescription and left, later determining that the prescription had been filled for a "Mrs. Halpin" whereupon she returned to the drugstore and questioned the accuracy of the prescription. During the process of this questioning, Plaintiff was in the area of the drugstore designed for the purpose of allowing customers to have prescriptions filled and obtaining the prescriptions. Upon her questioning the accuracy of the prescription, Plaintiff was invited by a pharmacist, Defendant's employee, to come into the area not designed

for customer use. The prescription area to which Plaintiff was invited, was partitioned off, not generally accessible to patrons. Plaintiff entered the area through a door after which she took two or three steps, turned to her left and took an upward step five and one-half inches high, through a passageway or door placing her in the prescription department. The floor covering in the corridor and on the floor of the prescription room was a rubber tile all of the same pattern. The binding on the step, not visible from the top of the step, was a non-slippery aluminum housing. The riser between the two levels was of a color contrasting with the floor covering on the surface area. Defendant's exhibits one and four show that the contrasting color of the riser is not visible to a person descending the step. Plaintiff, after entering the prescription area and verifying the accuracy of the prescription, left, following the course which she had used in entering the area. As Plaintiff walked over the difference in elevation she fell causing her injuries which were severe and permanent. Plaintiff testified that at the time she fell she was looking down at the floor for the step but did not see the step because the color of the floor was all the same. The differential between the time Plaintiff entered the prescription area and her fall was approximately three minutes. There was no guardrail at the point of difference in elevation.

Defendant first argues that the trial court erred in denying its motion for a directed verdict at the close of the evidence and its motion for judgment notwithstanding the verdict because as a matter of law there is no evidence from which Defendant's negligence or Plaintiff's due care can be inferred. It is apparent from the evidence that the fall did not take place in an area customarily used by the general public or by patrons of the business. However Plaintiff was invited into the area where prescriptions were compounded and the pre-

scription records kept which invitation extended to the use of the areas incident to ingress and egress from the prescription area. Pauckner v. Wakem, 231 Ill 276, 83 NE 202. Hence at the time of the fall Plaintiff was a business invitee and the Defendant was, in accord with the general rule, under a duty to exercise ordinary care for her safety. It is well settled that the owner of business premises is not an insurer of his invitees' safety and his liability if any, rests solely on his failure to exercise ordinary care. Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443. That a person may be injured while on business premises does not give rise to any presumption or inference of negligence. Rarus v. J. C. Penney Co., 39 Ill App2d 42, 187 NE2d 529. Nor is the owner required to use the safest of all materials or methods. (See Watts v. Bacon & Van Buskirk Glass Co., 18 Ill2d 226, 163 NE2d 425, where negligence could not be inferred from the use of plate glass rather than tempered glass and Wroblewski v. Hillman's, Inc., 43 Ill App2d 246, 193 NE2d 470, when negligence could not be inferred from failure to prepackage vegetables.) However we do not believe that the principles of the foregoing cases can be extended to support Defendant's insistence that no inferences of negligence can be drawn from the sameness of color of the floor covering above and below the elevation. Pollard v. Broadway Cent. Hotel Corp., 353 Ill 312, 187 NE 487, presents a factual situation in many ways similar to the facts of the instant case. In the corridor leading from the hotel to the outside there were two steps located approximately 16 feet apart. The corridor, including the steps, was covered with terrazzo. Plaintiff entered the hotel through this corridor the night before the incident, registered, stayed at the hotel during the night and the next morning on leaving the hotel, by way of the corridor, fell on one of the steps. Looking down the corridor from the lobby toward the

exit gave the appearance of a smooth level surface. There were lights in the corridor but none were lighted at the time of the fall. The court concluded that the hotel proprietor has no right to permit the existence of such a dangerous offset that the slightest mistake on the part of the guest will result in injury. Defendant owed the duty to exercise reasonable care to provide safe entrances so constructed and maintained that a guest would not fall or trip because of a misleading view afforded by the floor of the entrance to the hotel building. Defendant attempts to distinguish the Pollard case from the instant case on the grounds that in Pollard it was admitted that the lights were not on at the time of the accident. While the evidence in the instant case shows that lights were on, whether such lights were sufficient to illuminate and identify the elevation was controverted in the testimony. We do not believe this to be a proper case to say, as a matter of law, that Defendant was not negligent or that Plaintiff was contributorily negligent. From the conflicting evidence the jury could reasonably have inferred that the appearance of the area in question was deceptive because of the sameness of floor covering, insufficient lighting or lack of guardrail or warning signs. From its verdict it is apparent the jury did determine that Defendant failed to exercise ordinary care in some area and we are not disposed to interfere with such determination in view of the conflicting inferences which may be drawn from the testimony. Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47. The testimony likewise is subject to an interpretation which would support Plaintiff's contentions of due care for her own safety rather than Defendant's argument that all reasonable men must conclude that she was not in the exercise of such care. In view of the conflicting evidence this is not a case where the Plaintiff failed to see a condition or hazard which was clearly visible nor was the hazard equally

known to both parties as in the case of Clark v. C. P. Scott Co., 340 Ill App 260, 91 NE2d 452.

■ Defendant next argues that Plaintiff's prejudicial and inflammatory conduct in the presence of the jury and Plaintiff's counsel's prejudicial remarks in closing argument precluded a fair and impartial trial for Defendant. During the course of the trial Plaintiff's conduct was such that the court apparently felt it necessary to admonish her several times finally calling a recess in order to further admonish her. It appears from the record that Plaintiff rather persistently volunteered information which was uncalled for by the questions, was not responsive to questions, referred repeatedly to the fact that her father had had a stroke and was ill and that her mother had died seven years ago and that at one time she broke down and shed tears in the presence of the jury. While another witness was testifying Plaintiff protested from her chair at the counsel table and during her own testimony, at least at one time, demonstrated her inability to walk properly. The record shows an objection to the latter by Defendant and the court's order that the jury disregard the demonstration. While admonitions from the court to Plaintiff directing her to be more responsive, not to volunteer information and not to demonstrate are apparent from the record it is not apparent that counsel for the Defendant made any objections at that time nor that he at any time moved for a mistrial or withdrawal of a juror. During Plaintiff's closing argument counsel requested that the jury put themselves in the place of Plaintiff, Defendant objected and the objection was sustained. Counsel immediately repeated his appeal that the jury consider themselves before such fall in the place of the Plaintiff and the Defendant repeated his objection and the court made no ruling thereon. In Chicago & E. R. Co. v. Meech, 163 Ill 305, 45 NE 290, a personal injury action, Plaintiff

became hysterical, broke out crying, uttered a cry of distress and was carried out of the courtroom. Immediately Plaintiff's wife exclaimed "you are killing my husband, you will be responsible for the death of my husband." The witness on the stand at that time then began to cry and was excused temporarily. In answer to the contention that a new trial should be granted for prejudicial conduct the court held "The fact that a Plaintiff or Defendant or witness or any other person, suddenly swoons or faints, or gives vent to hysterical exclamations, or breaks down with hysteria, does not call for the granting of a new trial; and especially so when the party claiming to be prejudiced does not ask for the withdrawal of a juror and continuance of the case, but lies by and speculates upon his chances for a verdict. It is hardly probable that the occurrence in question affected in any way the verdict. If it had any effect, it was as likely to prejudice as to help the case of the Plaintiff. Of course, if it appeared that the dramatic occurrence that took place in the midst of the trial was intentional, and for an improper motive, it would afford ground for setting aside the verdict." See also Buckler v. Sinclair Refining Co., 68 Ill App2d 283, 216 NE2d 14. From the record before us we find no evidence from which the trial court should have concluded that the Plaintiff's conduct was intentional or the result of an improper motive. The trial court could have concluded that Plaintiff's conduct was a spontaneous and emotional reaction and that her failure to limit answers to the questions asked or to give responsive answers was the result of her unfamiliarity with courtroom proceedings and the tension engendered thereby. If Plaintiff's conduct had any prejudicial effect it may have well been that she was the one prejudiced rather than Defendant.

Likewise we believe that no error was committed by the trial court on account of improper remarks in final

arguments by Plaintiff's counsel. Although the remarks were improper no claim is or could be made that the amount of the verdict is excessive. Accordingly we fail to see how such remarks could have prejudiced Defendant.

Finding no error in the judgment of the Circuit Court of Tazewell County, judgment is affirmed.

Judgment affirmed.

ALLOY and CORYN, JJ., concur.