COLE TAYLOR BANK, Plaintiff-Appellee, v. ARTHUR CORRIGAN, Defendant-Appellant and Third-Party Plaintiff (Daniel Frawley, Third-Party Defendant).

Second District   No. 2—91—1168

Opinion filed June 10, 1992.

Thomas J. McDonough, of Chicago, for appellant.

John Jeffrey Zimmerman, Julie Line Bailey, and Thomas R. Mulroy, all of Jenner & Block, of Chicago, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Arthur Corrigan, appeals the order granting summary judgment in favor of plaintiff, Cole Taylor Bank (the bank), in the amount of $3,043,215.78. The bank sued defendant to collect on his guaranty of certain corporate debt. Defendant raises four issues on appeal: (1) whether the trial court abused its discretion in denying him discovery; (2) whether the trial court erred by not considering defendant's affirmative defenses when it entered summary judgment against him; (3) whether the bank's affidavit was sufficient to support the claimed amount of damages; and (4) whether the trial court abused its discretion in entering summary judgment without first giving defendant an opportunity to file a response after his motion for a continuance for discovery was denied. We reverse and remand.

The bank filed a complaint against defendant to collect on defendant's guaranty of a debt owed by Dancor International, Inc. (Dancor), which subsequently filed for protection under chapter 11 of the Bankruptcy Code (11 U.S.C.A. §1101 et seq. (West Supp. 1991)) on February 6, 1991. Dancor was founded in 1984 and is in the business of buying and selling plastic resin throughout the United States. On April 1, 1989, the bank and Dancor entered into a loan and security agreement, which was amended on July 1, 1990. The loan agreement provided for a line of credit secured by accounts receivable, inventory, equipment, intangibles and all other personal property owned by Dancor. On April 1, 1989, defendant, the vice-president of Dancor, and Daniel T. Frawley, the president, each signed personal guaranties of the indebtedness. The agreement originally terminated by its own terms on July 1, 1990; the amendment provided that the agreement would extend until September 15, 1990.

On September 15, 1990, the loan agreement was further extended by way of an amendment, but defendant did not sign the amendment. As of September 1, 1990, defendant was no longer vice-president of, or associated in any way with, Dancor. In the cause before this court, count I of the bank's pleadings is an action to collect on the guaranty. In count II, the bank pleaded that defendant had made fraudulent misrepresentations to induce the extension of credit.

After defendant's appearance, the bank served requests for admissions and interrogatories. Defendant's request to file his answer after he obtained discovery was denied by the trial court. Defendant filed his answer to the complaint on June 20, 1991. He denied some allegations in the complaint and alleged he was without sufficient

knowledge to respond to transactions between Dancor and the bank after his departure from Dancor. Defendant affirmatively alleged that the September 15, 1990, extension of the loan agreement was not authorized or binding on him or Dancor. Defendant affirmatively alleged that the September 15 amendment so changed the terms of the original agreement as to deny the bank the right to seek collection on the guaranty. Defendant listed four affirmative defenses: (1) the agreement terminated September 15, 1990, and the new extension did not apply to defendant; (2) upon information and belief, all funds currently due to the bank by Dancor were based on disbursements made after September 15, 1990; (3) the terms and conditions of the September 15 amendment so changed the terms of the loan that defendant was released from his liability on the guaranty; and (4) the July 1990 amendment was not attested to and was not a sufficient ground upon which to base liability. Defendant also filed a counterclaim against the bank.

On June 20, 1991, defendant filed a third-party complaint against Frawley seeking implied indemnity. He also filed with the court a request that the bank produce documents. In that request, he sought the documents supporting the loan agreement and records of all disbursements made by the bank to Dancor. On July 9, defendant filed his response to the bank's requests for admission and request for production of documents.

On July 11, 1991, the bank filed a motion for partial summary judgment in which it sought judgment only on count I. The bank alleged that as of July 9, 1991, there was a balance due from Dancor in the amount of $3,043,215.78. The motion was presented at a status conference at which counsel for defendant was not present. The motion was not served on defendant until that date. The court entered an order giving defendant until August 8, 1991, to file a response. The court set August 22, 1991, for a reply by the bank and September 6, 1991, for oral argument.

On July 31, 1991, defendant filed a motion for a continuance to respond to the bank's motion for summary judgment. Defendant also served his earlier filed discovery requests. Defendant's motion was heard by the court on August 8. Defendant explained that at the July 11 status conference the bank's motion was filed without prior notice to defendant. Defense counsel was engaged before another court on that date. Defendant had filed responses to the bank's discovery request, but defendant had not obtained discovery from the bank. Defendant charged the bank was trying to deny him the evidence he needed to support his response to the motion for summary judgment.

Defendant contended he needed the documents showing that the loan he had guaranteed was paid and the current indebtedness arose subsequent to September 15, 1990. The documents showing the amounts disbursed to Dancor were exclusively within the control of the bank, and defendant had no access to these records.

On August 15, 1991, the trial court issued a written opinion denying the motion for a continuance. The court noted that the guaranty provided that it was effective until defendant gave written notice to the bank that the prior guaranty would not apply to future loans. Defendant failed to give a written notice of termination. Thus, the trial court concluded the guaranty would cover all of Dancor's debt. The court accepted the bank's statement that there were no new loans involved, but only extensions of the existing loan which defendant had guaranteed. The court saw no reason why defendant would need discovery. The court denied defendant's motion for a continuance and simultaneously entered summary judgment in favor of the bank in the amount of $3,043,215.78.

Defendant immediately moved to vacate the judgment. He repeated that the documents in the bank's possession would show that the loan balance on September 15, 1990, should have been paid off completely by collections of the accounts receivable. Defendant also stated that the documents supporting the amount of the loan were entirely within the control of the bank. Defendant also raised the same issues which will be addressed in this appeal.

The trial court denied defendant's motion to vacate judgment, opining that his requests were a mere "fishing expedition." The court dismissed defendant's counterclaim and granted the bank's motion to dismiss count II of the complaint. The court found no just cause to delay enforcement or appeal of the order, and defendant filed a timely notice of appeal.

### DISCOVERY

Defendant's first argument is that the trial court erred in denying him discovery by not granting his motion for a continuance. The sole issue considered by the trial court was whether the requested discovery was necessary to respond to plaintiff's summary judgment motion. The trial court found, and the bank raised, no other defect with defendant's motion for a continuance to complete discovery.

■ The purposes of litigation are best served when each party knows as much about the controversy as is reasonably practical. The objectives of pretrial discovery are to enhance the truth-seeking process, to enable attorneys to better prepare and evaluate causes, to

eliminate surprises, and to insure that judgments rest on the merits and not upon the skillful maneuvering of counsel. (*Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 231-32.) Discovery is not a tactical game. Pretrial discovery presupposes a wide range of relevance and materiality which includes not only what is admissible at trial but also that which leads to what is admissible at trial. (*Mistler*, 111 Ill. App. 3d at 232.) The defendant's requests were not a fishing expedition, as the trial court characterized them, because the requested documents related to some of the ultimate facts necessary for judgment. (See *Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 157.) The documents would have helped defendant prepare his case, and thus the trial court erred in denying discovery. (*Senese v. Climatemp, Inc.* (1991), 222 Ill. App. 3d 302, 320.) While the question of defendant's liability might have been a question of law because it was based on documents, the question of damages is a question of fact. (*Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 725, 734-35.) The trial court determined that the bank's records were not relevant even when this factual issue was contested by defendant.

The trial court's finding that the bank's records were not relevant ignores the realities of the accounts receivable financing agreement in question. This loan was not a single disbursement of funds upon which a balance can easily be calculated, but it involved numerous transactions. The bank agreed to lend Dancor up to 80% of the value of its invoices as they were submitted over a period of many months. The loan balance was reduced as Dancor's receivables were paid. The interest rate tracked the prime rate. The number of days on which interest accrued at a certain rate on a constantly changing balance also varied. All the documents which supported the claim for judgment, namely, the lists of the dates and amounts of disbursements, were in the hands of the bank. Defendant was a guarantor who had no knowledge of the amounts disbursed to the principal, the dates of the disbursements, the interest rates or the dates and amounts of the setoffs. He was in no position to determine whether the bank's allegations were correct. Thus, by refusing to allow defendant discovery as to the documents, the trial court erred because the documents related to the issue of damages, which was a factual, not legal, issue.

In addition, defendant raised an issue that the documents were relevant to whether his obligation was released when the bank and Dancor changed the nature of the underlying obligation. (See *McLean County Bank v. Brokaw* (1988), 119 Ill. 2d 405, 413-14; *McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629, 633-34.) Defendant also argued that the bank's claims that it had

not disbursed more funds after September 15, 1990, and that the balance was over $3 million were implausible. The bank's own documents show that it had lent its funds at an asset base of 80% of Dancor's receivables, while keeping a security interest in all the receivables. The September 15 extension retained a provision for a borrowing base and allowed the bank to collect 75% of Dancor's other receivables. Defendant thus contends an examination of the records would show either that the loan he guaranteed was paid in full as the receivables were paid by Dancor's debtors over the next few months or that the bank extended new funds, which would not have been part of the loan that he guaranteed.

On these facts, we conclude that the trial court erred in ruling that the bank records sought by defendant were not relevant to the bank's motion for summary judgment.

## MOTION FOR A CONTINUANCE

Based in large part on his previous argument that the trial court improperly foreclosed discovery, defendant next argues that the court erred in denying his motion for a continuance. We agree.

We note that defendant's motion for a continuance was not filed on the eve of a long-scheduled trial. There was no showing that anyone would suffer prejudice from a delay. Moreover, since all the evidence was in the hands of the bank, any delay would depend on, and be in control of, the bank's prompt delivery of documents. Defendant had not unreasonably delayed the proceeding in requesting discovery. (*Cf. Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195 (opponent had four months to respond to summary judgment motion but failed to obtain testimony of an expert, who was not in the control of movant).) Since the bank failed to provide defendant any discovery, he could not do more than request the continuance. Finally, the trial court's order violated fundamental fairness and the objectives of discovery. Defendant was being sued concerning financial matters entirely beyond his control and knowledge. Thus, the trial court abused its discretion in failing to grant a continuance. *Jack v. Pugeda* (1989), 184 Ill. App. 3d 66, 77-78.

## TRIAL COURT'S RELIANCE ON AFFIDAVIT

Defendant next argues that the trial court erred by relying upon an affidavit by David Lilek, vice-president of the bank, in granting summary judgment and by not striking the affidavit. We agree. In his affidavit, Lilek stated that he was a vice-president of the bank and

had personal knowledge of the events he described. Paragraph 6 of Lilek's affidavit contained the following bare assertions:

"As of September 15, 1990, there was an outstanding principal balance due from Dancor of $3,665,000. Cole Taylor made no additional advances after September 15, 1990. Since September 15, 1990, Dancor has reduced the principal balance due to $2,882,862.70 as of July 9, 1991. Accrued interest as of July 9, 1991, is $160,353.08."

Defendant moved to strike the affidavit because it violated the best evidence (original writing) rule, the hearsay rule, and the business records rule. In addition, defendant argued that the affidavit does not reflect Lilek's familiarity with the bank's bookkeeping records. The affidavit did not have attached to it the documents upon which Lilek relied in determining his calculation of the balance. Defendant also argued that Lilek's affidavit contained conclusions rather than evidentiary facts, all in violation of Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)). Defendant makes the same arguments on appeal.

■ Lilek's affidavit essentially consisted of a summary of unnamed records at the bank. Where a fact may be ascertained only by the inspection of a large number of documents comprised of detailed statements, a summary of those documents may be received into evidence. However, the mass of documents must be placed in the hands of the court or be made accessible to the opposing party for inspection. (*People ex rel. Wenzel v. Chicago & North Western Ry. Co.* (1963), 28 Ill. 2d 205, 213.) Defendant also notes that with bank record computerization, requiring a list of transactions will not place an undue hardship on the bank. We agree that the trial court erred by relying upon a summary when the underlying records and facts were not tested by inspection. See *Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co.* (1990), 195 Ill. App. 3d 1036, 1051-52.

The bank does not respond to defendant's arguments but merely states that a bank vice-president is competent to testify regarding a bank's records. That proposition may be true, and the bank's cited cases may support it, but it applies to only one element of the admissibility of evidence based on business records. The bank's cases do not address the other foundational requirements. While the bank's documents show that Lilek signed the original documents evidencing the loan and security agreement, the affidavit did not show his familiarity with the amounts disbursed or the amounts collected. (*Cf. Ford Motor Credit Co. v. Neiser* (1990), 196 Ill. App. 3d 515, 522-23 (testimony

showing interdepartmental records were reliable).) He did not provide the documents upon which he relied when he made his conclusion that the current balance due was $3,043,215.78. (See *Landmark*, 195 Ill. App. 3d at 1051-52.) We note that under Supreme Court Rule 236 (134 Ill. 2d R. 236 (admission of business records in evidence)), it is the business record itself, not the testimony of a witness who makes reference to the record, which is admissible. (*Smith v. Williams* (1975), 34 Ill. App. 3d 677, 680; see Ill. Rev. Stat. 1989, ch. 110, par. 8—401 (the book shall be admitted into evidence).) The bank did not lay the foundation necessary to overcome the original writing and hearsay rules. The conclusions within the affidavit were not admissible into evidence, and thus the affidavit did not comply with Rule 191(a) (134 Ill. 2d R. 191(a)). Since the affidavit was inadmissible, the trial court erred by relying upon it in granting summary judgment. *Kaplan v. Disera* (1990), 199 Ill. App. 3d 1093, 1096.

### SUMMARY JUDGMENT

Defendant argues that the trial court erred when it entered summary judgment on August 15, 1991, immediately after denying his motion for a continuance. He disputes the trial court's implication that he waited too long to file the motion.

Summary judgment is an aid in the expeditious disposition of a lawsuit, but it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271.) In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. (*Loyola Academy*, 146 Ill. 2d at 271.) A trial court determines a motion for summary judgment based on the record as it exists at the time the motion is heard. Where reasonable persons could draw divergent inferences from the record, the motion should be denied. (*Loyola Academy*, 146 Ill. 2d at 272.) The trial court has no discretion (*Loyola Academy*, 146 Ill. 2d at 272); summary judgment is proper only when the pleadings and affidavits show that no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Keating v. Dominick's Finer Foods, Inc.* (1992), 224 Ill. App. 3d 981, 987). To overcome a motion for summary judgment, an opponent need not prove his case at this preliminary stage but must present some factual basis that would arguably entitle him to a judgment. *Keating*, 224 Ill. App. 3d at 987.

The trial court had set September 6, 1991, for a hearing on the bank's motion for summary judgment, which was after the due date of defendant's discovery requests. Defendant states on appeal that because the court's docket was backlogged, he filed his motion for a continuance on the first day the judge's secretary told him was available, which was approximately two weeks prior to the August 8, 1991, hearing. This statement does not appear in the record, and we will therefore not consider it. Nonetheless, the circumstances indicate that defendant acted with due diligence in filing his motion for a continuance, as he filed it before August 8, the due date of his response. Moreover, the bank's response to the motion, dated August 5, admits defendant's motion was filed on July 31.

■ The trial court granted summary judgment to the bank without granting defendant the opportunity to file a response to the bank's motion, and after denying defendant the opportunity to respond with discovered facts. Upon denying defendant's request for discovery, the trial court should have given him a chance to file his response to the bank's motion for summary judgment rather than assuming the bank's position was unassailable. Summary judgment was an unduly drastic remedy under these circumstances.

In addition, defendant argues the trial court in effect accelerated the judgment date, which was originally scheduled for September 6, to a date preceding the due date of the bank's responses to discovery, which were due no later than August 30. Defendant may have had the information necessary to impeach the bank's filings prior to the scheduled hearing. Once judgment was entered, however, defendant had no grounds to compel the bank to comply with the discovery request. His ability to modify or vacate the judgment with factual evidence was eliminated. Under these circumstances, and viewing the evidence in the light most favorable to defendant, we find that the trial court abused its discretion.

Because we reverse the trial court's judgment, we need not reach the remaining issues raised by defendant. For the above reasons, the judgment of the trial court is reversed, and the cause is remanded so as to allow defendant discovery and for further proceedings.

Reversed and remanded.

BOWMAN and DUNN, JJ., concur.