PATRICIA GLASS, Plaintiff-Appellant, v. MORGAN GUARANTY TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—91—2793

Opinion filed November 12, 1992.

Paul W. Grauer & Associates, of Schaumburg (Paul W. Grauer and William S. Robinson, of counsel), for appellant.

Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Sarah Hansen Sotos and Janella L. Barbrow, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Patricia Glass, filed this action to recover damages for injuries she sustained after falling down steps located in the food court of Randhurst Shopping Center in Mount Prospect, Illinois. She alleged various defects in the design of the stairs owned and maintained by a group of defendants including Morgan Guaranty Trust Co. and collectively referred to in her complaint as "Randhurst." Randhurst filed a motion for summary judgment, which the trial court granted. Plaintiff appeals.

We affirm.

BACKGROUND

On January 13, 1988, Patricia Glass purchased food at a self-serve food court in Randhurst Shopping Center. There were tables and chairs on the same level as the food vendors and a lower level with additional seating. Glass approached the five-step flight of stairs to the lower level, pausing and looking down before descending. Both of her hands were full; she held a salad in one hand and a drink in the other. After taking two or three steps, she fell to the bottom.

The stairs in question are covered with brown ceramic tiles surrounded by grout lines. Glass stated in her deposition that she had had trouble in the past with the stairs because of their "steepness." She also said it was hard to define where each step stopped and started because of their uniform color and the pattern of the grout lines. She admitted she did not see any chipped or loose tile or other physical defect in the stairs. She did not slip on food or any other substance on the steps.

Randhurst filed its motion for summary judgment after taking discovery. Glass did not identify an expert witness to establish any of the alleged design defects of the staircase. Randhurst argued in the motion that Glass had failed to produce "facts indicative of a tort duty"

and "facts indicative of a proximate causal connection" between Randhurst's conduct and Glass' fall.

The complaint alleges the existence of design defects in the configuration of the "stair system," including the rise angle of the steps and the placement and design of the handrails. Certain allegations state that the relationship of the rise height to the tread depth violated safe engineering and architectural standards, causing Glass to "fall forward, which in combination with the improper rise angle and improperly configured handrail caused [Glass'] injuries." Another allegation is Randhurst's failure to warn customers of the "dangerous system." The final assertion of negligence is based on the supposedly deceptive appearance of the stairs. This paragraph of the complaint is the focus of this appeal and states as follows:

"[I]n addition to the above design defects, the stairway system was negligently built with ceramic tile of uniform 'brownish' color and appearance such that the user of the stairway could not readily perceive the nose (front edge) of each particular stair or step; and the defendants did not paint, stripe, or otherwise mark the nose of the steps such that they could be readily perceived by plaintiff and other users who were attempting to carry food from the upper to the lower level; and such defect when combined with the above defects caused plaintiff to fall forward down the stairway."

OPINION

In opposing Randhurst's motion for summary judgment, Glass had the burden of providing a factual basis on which to assert the elements of a cause of action in negligence; a duty, breach of that duty, and injury proximately resulting from the breach. (*Fahey v. State & Madison Property Association* (1990), 200 Ill. App. 3d 437, 440, 558 N.E.2d 192, *appeal denied* (1990), 135 Ill. 2d 555, 564 N.E.2d 836.) In this appeal she states that her deposition testimony provides "ample evidence" and cites her past "trouble" with the stairs, which caused her to "stop and get her bearings" before descending. She found them "steeper than stairs she normally confronted in everyday life" and found them "deceptive" due to the combination of the brown color of the stairs and the "numerous grout lines" in the tiles of the steps, which made it "difficult to distinguish the leading edge of each stair."

In response, Randhurst maintains that the record fails to establish any facts indicative of a duty on its part to reconfigure the stairs, warn users of the stairs, or mark the nose of each step. Randhurst

notes that stairs, by their very nature, create the risk that persons using them might be injured by a fall. That does not make them *unreasonably* dangerous, however. *Alcorn v. Stepzinski* (1989), 185 Ill. App. 3d 1, 6, 540 N.E.2d 823 (Open stairway to basement that was directly adjacent to garage entrance did not create unreasonable risk absent facts that stairway was masked or obscured; they were "just stairs"); see also *Robinson v. The Suitery, Ltd.* (1988), 172 Ill. App. 3d 359, 526 N.E.2d 566 (Defendant had no duty to wrap broken glass before placing it in dumpster shared by others).

Glass nonetheless contends that Randhurst breached its duty of reasonable care under the Illinois Premises Liability Act (Ill. Rev. Stat. 1991, ch. 80, par. 302) "by providing a stairway in its food court area that was not reasonably safe for customers to use while carrying food items." According to Glass' deposition testimony, she had noticed problems with the stairs in the past and thought they were too steep. She said the grout lines around the tiles created an optical illusion that made it difficult for her to distinguish the edge of each step. She further contends that the upper bannister or handrail was too wide for her to grasp as she fell, which increased the dangerous condition of the steps.

■ We address the last point first. The stairway has two sets of rails, an upper bannister and a lower handrail. According to the complaint, the lower handrail is for children and the higher one is for adults, rising approximately 3½ feet above the steps. Glass maintains that the adult bannister "was much too wide for her to grasp" *as she fell*. Therefore, she contends, they were unreasonably dangerous.

We must reject this argument. She did not produce any expert affidavits or other evidence to support the bare assertion that the width of the rail made it unreasonably dangerous because a human hand could not grasp it while falling. Moreover, she admittedly had both hands full, which meant that she was not using the bannister to aid her descent. We must conclude, therefore, that nothing in the record establishes a triable issue as to the condition of the handrails. See, e.g., *Alcorn v. Stepzinski* (1989), 185 Ill. App. 3d 1, 540 N.E.2d 823 (Where stairs on which plaintiff fell were not configured in a way that obscured them and no expert testimony was offered, court would affirm summary judgment in favor of defendant landowner); *Fahey v. State & Madison Property Association* (1990), 200 Ill. App. 3d 437, 558 N.E.2d 192 (Summary judgment properly entered in favor of property owner on grounds there was no duty, either under premises liability statute or common law, to provide handrails for steps in restroom).

We need not discuss the allegations relating to the height of the risers and the depth of the treads because Glass did not identify an expert witness to substantiate them. Nor did she identify any engineering and architectural standards that allegedly were violated.

■ The remaining allegations of liability relate to what Glass terms an optical illusion, which she says caused the steps to blend together visually. She contends that this illusion was caused by the uniform color of the tiles and the appearance of the grout lines. She further alleges that Randhurst had a duty to warn her of the attendant dangers.

While Glass claims that her fall was caused by her inability to discern where one step ended and the next began, she has not cited any case that has imposed a duty on a landowner to use different colors on stair treads or to paint a contrasting stripe on the nose of each stair to better distinguish it from the next. She does cite cases in which stairways were found to be part of an unreasonably dangerous condition. In each case, however, the steps were found to pose an unreasonable risk of harm for reasons not present in the pending case. *E.g., Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978, 428 N.E.2d 1146 (Restaurant patron fell down stairs that were concealed by a closed door; no warning of existence of steps beyond door was posted); *Kittle v. Liss* (1982), 108 Ill. App. 3d 922, 439 N.E.2d 972 (Tavern patron slipped and fell on icy patch of outside steps after tavern turned off lighting); *Halpin v. Pekin Thrifty Drug Co.* (1967), 79 Ill. App. 2d 153, 223 N.E.2d 708 (Customer walking in back area of store fell when elevation of floor dropped more than five inches; flooring on both levels was the same, there was no handrail, and plaintiff could not see where the level of the floors changed).

These cases do not aid Glass. True, in *Halpin* the court did consider the uniformity of color and flooring material as a contributing factor to the plaintiff's inability to perceive the change in elevation. That case did not involve an open and obvious flight of stairs, however. Instead, the step in question was a single, 5½ inch "step-up" from one corridor onto the floor of a different room. The plaintiff negotiated the step on her way up, but when she was returning she could not readily determine where the change in elevation occurred. Both floors and the step were covered with the same material, which caused an unbroken visual flow from the higher plane to the lower one. There was no guard rail or other marker at that point, leading plaintiff to step off into "space." Similarly, in *Allgauer*, the plaintiff stepped through a door, expecting a flat surface or landing, only to

plunge down a stairway that had been concealed from view by the door.

None of the above cases hold that an open and obvious stairway is unreasonably dangerous solely because of the normal risks a person undergoes when using stairs. Instead, the steps that have been found unreasonably dangerous were hidden or obscured in such a way as to become a sort of trap for the unwary. In such cases, the landowners were chargeable with negligence for doing or failing to do something that made the stairs more dangerous than they would have been "just as stairs." In the pending case, by contrast, it is undisputed that Glass saw the stairs, recognized them as stairs, and was using them with full knowledge of the risk of falling as she made her way down them. Indeed, she admitted she was familiar with the characteristics of these particular stairs from earlier experience.

Because the pending case does not involve a difficult-to-perceive change in elevation, inadequate lighting, a physical defect, or the absence of handrails, the sole basis of liability rests upon an argument that Randhurst should have provided a better visual contrast between the edges of the steps and the treads beneath. In the complaint, Glass charges that Randhurst did not "paint, stripe, or otherwise mark the nose of the steps so that they could be readily perceived."

Glass' position, we believe, goes beyond what the law requires of landowners who own or control stairways that are used by shoppers or other members of the public. Presumably, any set of stairs that is one solid color or that has linear patterns would be subject to a complaint similar to the one Glass makes here. People going down stairs are not limited in their visual perception to color or surface pattern, however, because the eye perceives spatial depth as well. We conclude that Randhurst cannot be held to have breached a duty of *reasonable* care on the sole ground that it did not paint or mark the nose of each step. (See *Fahey*, 200 Ill. App. 3d at 439 (Court dismissed all allegations of negligence involving stairs in washroom, including an allegation that landowner failed to "provide paint upon the stairs" to distinguish them from surrounding floor).) While Randhurst may have been able to devise ways to make its stairs safer, the law does not require a person to foolproof stairs against normal risks. As we noted in *Robinson v. The Suitery*, after reviewing precautions a person could take when disposing of broken glass in a common dumpster, "such practices may be desirable as a general proposition, [but] we do not believe that the law requires such extraordinary care in waste disposal." *Robinson v. The Suitery*, 172 Ill. App. 3d at 363, 526 N.E.2d at 568.

█ We note also that Glass has framed Randhurst's breach of duty as failing to make the steps reasonably safe for people descending the stairs *while holding food*. We decline to recognize the existence of a duty to make stairs safer for people who are holding objects in both hands instead of using the handrails. We conclude that the record does not establish the *prima facie* elements of negligence. Therefore, the trial court properly entered summary judgment in favor of Randhurst.

█ Because we have found no breach of duty regarding the configuration or appearance of the stairs, we further find there was no duty to warn. Indeed, Glass' admission that she was aware of the perceived dangers obviates any duty Randhurst might have had to warn her of them. To support her position on the duty to warn, however, Glass relies on *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. In that case, a customer of K mart was injured when he walked into a post directly outside the exit of the store. Because he was carrying a large package he did not see the post in time to avoid it. The court considered the physical layout of the area and the fact that the particular exit was from a section of the store that sold a number of large items. The court held that the close proximity of the post to the exit made it dangerous to customers who, foreseeably, would be carrying large packages from that exit and whose vision might be impaired thereby. The simple displaying of a sign near the exit would remind distracted or forgetful customers.

In the pending case, however, Glass knew of the potential danger of the stairs and was closely observing them as she descended. Accordingly, a sign drawing her attention to them would have been pointless. We conclude that Randhurst owed her no duty to warn under these facts. (See also *Amaral v. Woodfield Ford Sales, Inc.* (1991), 220 Ill. App. 3d 357, 581 N.E.2d 19, *appeal denied* (1992), 143 Ill. 2d 635, 587 N.E.2d 1011 (Summary judgment for defendant affirmed where business invitee was fully aware of the potential danger in walking on concrete floor coated with radiator fluid); *Wadycki v. Vanee Foods Co.* (1990), 208 Ill. App. 3d 492, 567 N.E.2d 423 (Summary judgment affirmed where plaintiff was fully aware of potential danger in putting weight on a loose piece of cardboard protruding from back doors of trailer while balancing on ladder).) The record in the pending case demonstrates that Glass' fall on the stairs was not attributable to poor lighting; unsafe design; a physical defect of or condition on the steps themselves; concealment of changing elevations, or any other circumstance that might lead to a triable issue of fact as to the existence of an unreasonably dangerous condition.

362

Accordingly, we conclude that the trial court properly entered summary judgment in favor of Randhurst. See, *e.g., Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 533 N.E.2d 486.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.