NANCY ROTZOLL, as Adm'r of the Estate of Elizabeth Benson, Deceased, Plaintiff-Appellant, v. OVERHEAD DOOR CORPORATION, Defendant-Appellee and Counterplaintiff (Pulmocare Medical Supply, Inc., *et al.*, Counterdefendants).

Fourth District   No. 4—96—0782

---

Argued March 11, 1997.—Opinion filed June 13, 1997.

Thomas F. Koester (argued), of Phebus, Winkelmann, Wong & Bramfeld, of Urbana, for appellant.

Gerald O. Sweeney, Jr. (argued), and Christine M. Johnson, both of Lord, Bissell & Brook, of Chicago, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

In March 1995, Elizabeth Benson filed a complaint against defendant Overhead Door Corporation (Overhead Door), alleging strict products liability and negligence. Since the filing of the complaint, Elizabeth has passed away. Nancy Rotzoll, as administrator of Elizabeth's estate, has been substituted as plaintiff. The trial court

granted defendant's motion for summary judgment, and plaintiff appeals. We affirm.

Plaintiff alleged that on November 17, 1994, Elizabeth, who was then 88 years of age, was entering Pulmocare Medical Supply's (Pulmocare's) place of business in Champaign with the use of a walker. The automatic sliding glass door opened for Elizabeth but closed on her as she was continuing through the doorway, knocking her down and injuring her.

The automatic sliding door system consists of several components. Activating devices, such as motion detectors, initiate the opening and closing of the door by sensing movement as someone approaches either side of the door. Without some sort of activation device, the automatic door system would not function at all. Numerous variable settings, such as door closing speed, closing force, and the time delay before closing, are all set by the installer or the operator of the door system. Regardless of how these variables are set, other door components are designed to prevent the doors from closing on an individual who is crossing the threshold of the door. Threshold protection is achieved through the use of transmitters and receivers that, when interrupted by an object breaking the plane of the doorway, prevent the door from shutting.

Defendant sells both complete and incomplete automatic door systems. While defendant does sell door systems complete with activating devices such as motion detectors, the customer may order a system without such devices and purchase the devices from other suppliers. All door systems do, however, come with some sort of threshold protection, and defendant offers its customers two alternative threshold safety devices. The first is a twin "safety-beam" system, which consists of two pairs of transmitters and receivers, one pair installed at a height of 24 inches above ground, the other pair installed 48 inches above ground. Two beams of light are transmitted across the threshold, and the continued interruption of either beam will stop the doors from shutting. The second option is a "threshold sonar scan" system, which utilizes one safety beam as well as a "threshold scan." This threshold scan is positioned 30 inches above ground and appears designed to detect persons or objects within a short distance of the threshold on either side, not just those actually breaking the plane of the doorway. As the zone of detection produced by the threshold scan is broader than the two-beam system, the automatic doors will be prevented from closing in a greater number of situations.

The automatic sliding door system at issue was ordered, installed, and configured by Tee Jay Central, Inc. (TJC), on behalf of its client

Pulmocare. TJC ordered a Series 2310, Model C1304 automatic door from defendant in March 1994. The system was ordered without activating devices, as TJC chose to order motion detectors from two other manufacturers not made parties to this action. For threshold protection, TJC chose the twin "safety-beam" system rather than the "threshold sonar scan" system to be utilized at Pulmocare's facility.

In the proceedings below, the essence of plaintiff's allegations was that the twin safety-beam system manufactured by defendant was not designed to detect the presence of a walker crossing the plane of a doorway. Plaintiff claims Elizabeth's walker crossed the threshold of the automatic door at Pulmocare's facility, but the safety beams passed through the walker uninterrupted, thereby failing to prevent the door from closing on her. Plaintiff alleged both strict liability and negligence on defendant's part for the defective design of the door system. The trial court, in an order that does not contain written findings, granted defendant's motion for summary judgment. Plaintiff's motion to vacate the order of summary judgment and to amend her pleadings was denied, and this appeal followed.

■ Summary judgment is appropriate when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Champaign National Bank v. Babcock*, 273 Ill. App. 3d 292, 299, 652 N.E.2d 848, 853 (1995); *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 845, 649 N.E.2d 493, 495 (1995). When ruling on a motion for summary judgment, a trial court must view all evidence in the light most favorable to the nonmovant. *Malone*, 271 Ill. App. 3d at 845, 649 N.E.2d at 495; *Sparacino v. Andover Controls Corp.*, 227 Ill. App. 3d 980, 984, 592 N.E.2d 431, 434 (1992). We review *de novo* grants of summary judgment. *Malone*, 271 Ill. App. 3d at 845, 649 N.E.2d at 495; *Depre v. Power Climber, Inc.*, 263 Ill. App. 3d 116, 117, 635 N.E.2d 542, 544 (1994).

■ Plaintiff challenges the trial court's grant of summary judgment on his counts of strict liability and negligence. To recover against a manufacturer under the theory of strict liability, a plaintiff must prove his injury resulted from an unreasonably dangerous condition of the product that existed at the time the product left the manufacturer's control. *Depre*, 263 Ill. App. 3d at 117-18, 635 N.E.2d at 544; *Loos v. American Energy Savers, Inc.*, 168 Ill. App. 3d 558, 562, 522 N.E.2d 841, 844 (1988). A product may be unreasonably dangerous due to a manufacturing defect, a failure to warn, or a defect in design. *Lamkin v. Towner*, 138 Ill. 2d 510, 528, 563 N.E.2d 449, 457 (1990); *McColgan v. Environmental Control Systems, Inc.*,

212 Ill. App. 3d 696, 699, 571 N.E.2d 815, 817 (1991); W. Keeton, Prosser & Keeton on Torts § 99, at 695 (5th ed. 1984) (hereinafter Keeton).

Plaintiff here alleges strict liability based upon a defect in the *design* of the components manufactured by defendant and sold to TJC for installation at Pulmocare. Plaintiff does not allege a failure by defendant to warn of a risk or hazard related to the way the components sold to TJC were designed. Nor does plaintiff allege any manufacturing defect, *i.e.*, that the two-beam threshold protection system was not in fact working at the time Elizabeth crossed the threshold with her walker. Rather, the essence of plaintiff's strict liability count is that the two-beam threshold protection system was defectively designed, since it was possible for the two narrow safety beams to pass through gaps in Elizabeth's walker as she began crossing the threshold of the doorway.

■ The law in Illinois is clear that the obligation that gives rise to a duty to avoid reasonably foreseeable injury to another does not extend to the anticipation of how manufactured components, not themselves inherently dangerous or defective, can become potentially dangerous when integrated into a unit designed, assembled, installed, and sold by another. *Sparacino*, 227 Ill. App. 3d at 986, 592 N.E.2d at 435; *Depre*, 263 Ill. App. 3d at 119, 635 N.E.2d at 545. In *Sparacino*, the defendant, Andover Controls Corporation (Andover), was in the business of manufacturing microprocessing equipment for building automation systems. Andover sold an energy management system (EMS) to codefendant Communication Management Corporation (CMC) for installation at a local high school. Plaintiff Sparacino, a chemistry teacher, arrived early to work one morning to prepare a chemical experiment that would produce chlorine gas. He flipped on an overhead fan to draw out the noxious chlorine gas, but the EMS had been programmed such that the fan would not operate until later in the day. The plaintiff was injured as a result of inhaling chlorine gas. Summary judgment in favor of Andover was granted.

The plaintiff had argued the EMS produced by Andover and sold to CMC was not designed to override the manual switch on the exhaust fan, that an override mechanism may have prevented his injuries, and that Andover had the technology to provide this safety feature and knew the danger involved in its absence. However, the evidence disclosed that the specifications for the product were developed by outside architects, energy consultants, and design engineers. CMC selected the EMS supplied by Andover based upon these specifications. Andover did not design the heating, ventilating, and air-conditioning system into which the EMS was incorporated.

Andover was not given plans and specifications for the project and did not install the EMS in the building. The EMS was user programmable, allowing the customer to customize the EMS as he or she saw fit. CMC programmed the EMS for the high school. *Sparacino*, 227 Ill. App. 3d at 985, 592 N.E.2d at 435.

The appellate court in *Sparacino* affirmed the granting of summary judgment in favor of Andover. The court found that the EMS was not dangerous as assembled; rather, it was the manner in which CMC installed and programmed the EMS that was to blame. Andover's product was not defective or inherently dangerous, since the EMS performed exactly in the manner in which it was programmed to perform. Andover had no duty to foresee that CMC would integrate the user-programmable EMS in a dangerous or defective manner and, thus, summary judgment for defendant was proper. *Sparacino*, 227 Ill. App. 3d at 986, 592 N.E.2d at 435.

A similar result was reached in *Depre*. In that case, the decedent was killed when the "false car" (a skeleton elevator car used during installation of elevators in high-rise buildings) in which he was riding snapped apart from its hoisting mechanism and fell 49 stories. Plaintiff sued the manufacturer of the stirrup bar that connected the car to the hoisting mechanism. Plaintiff alleged the stirrup bar was defectively designed because it permitted only a single bolt to join the hoisting mechanism and the false car. Plaintiff suggested defendant had a duty to provide some form of redundant connecting device. *Depre*, 263 Ill. App. 3d at 117, 635 N.E.2d at 543-44.

Defendant was not provided with specifications from the purchaser of its product as to the design of the stirrup bar. Defendant designed a standard stirrup bar, which allowed for attachment of a variety of mechanisms. *Depre*, 263 Ill. App. 3d at 119, 635 N.E.2d at 545. The appellate court affirmed the trial court's grant of summary judgment in favor of the defendant, since it was undisputed the defendant's stirrup bar contained two bolt holes and that it was left to the assembler of the final product (the false car) to determine whether to use one or two of the bolt holes:

> "The final product in this case was the false car, which was designed by Dover Elevator Company. Dover Elevator Company purchased the motor and stirrup bar from [defendant], purchased the other component parts necessary for a finished false car from other manufacturers and assembled the false car. By virtue of Dover Elevator Company's design of the false car, Dover could only utilize one of the two bolt holes provided by [defendant's] stirrup bar. [Defendant] had no control over how Dover Elevator Company installed the stirrup bar, nor was [defendant] responsible

for the fact that the false car was not designed to take advantage of the redundant system that had been provided by [defendant]." *Depre*, 263 Ill. App. 3d at 119-20, 635 N.E.2d at 545.

■ In the present case, defendant's motion for summary judgment was supported by two affidavits of Donald Moerbe, a representative of Horton Automatics (the division of Overhead Door responsible for making the door at issue). Also attached were sworn interrogatory answers provided by TJC and an authenticated copy of the service and installation manuals for the automatic doors. Moerbe's affidavits, which were uncontradicted, established defendant's right to judgment as a matter of law, in light of *Sparacino* and *Depre*. According to Moerbe, defendant was not advised by TJC or Pulmocare as to how the door components sold by defendant would be integrated into the completed automatic door assembly system, which was designed and installed by TJC for Pulmocare. Defendant was not advised of the typical consumers who frequented Pulmocare. Defendant had no role in setting or adjusting the closing speed, closing force, or time delay of the completed automatic door assembly.

As in both *Sparacino* and *Depre*, there was nothing defective in the design of the product manufactured by the defendant. Rather, in both cases (as in this case) the danger arose from the later assembly, design, and installation of the complete system by a third party. See also *Ruegger v. International Harvester Co.*, 216 Ill. App. 3d 121, 126, 576 N.E.2d 288, 290 (1991) (affirming summary judgment in favor of defendant cab-chassis manufacturer, where "defendant did not assemble the cab-chassis, determine its ultimate use ***, or choose the type of optional equipment which might be either helpful or necessary to make the final vehicle safe"). Moerbe's affidavits established defendant's lack of knowledge as to Pulmocare's clientele and any corresponding safety requirements, and we reject plaintiff's contention, made at oral argument, that the very name "Pulmocare" should, in the minds of reasonable automatic door manufacturers, conjure up visions of elderly patrons with walkers. See Keeton § 101, at 706 ("If the maker of the component part *** knows or has reason to know that the part will be used in a way that will make the assembled product unreasonably dangerous then such a seller may well be subjected to liability").

Liability here is even more tenuous than in *Sparacino* and *Depre*, considering that, at the time the door system at issue was sold to TJC for use at Pulmocare, defendant actually offered an alternative threshold protection system to prevent the exact type of accident that occurred here. The threshold sonar scan system described earlier, with its wider zone of detection, is depicted in defendant's in-

stallation instructions (attached to defendant's motion for summary judgment) detecting a person with a walker on the verge of crossing the threshold of the door system. Plaintiff, in fact, attached this very same diagram to her response to defendant's motion for summary judgment. This was an alternative design of the threshold safety device made available by the defendant. The defendant here was under no duty to inquire into the nature of the final use, assembly, and programming of the automatic door assembly or to investigate the nature of Pulmocare's business to evaluate the effectiveness of the safety devices chosen by TJC. See *Hunt v. Blasius*, 74 Ill. 2d 203, 209, 384 N.E.2d 368, 371 (1978) ("An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them"); *Loos*, 168 Ill. App. 3d at 563, 522 N.E.2d at 845 (affirming summary judgment in favor of maker of support tower that collapsed, since tower itself was not defective and defendant "was not asked to test its appropriateness in light of its intended use in the total system"). Defendant could not dictate to its customers which particular doors and safety systems they must buy. See *Ruegger*, 216 Ill. App. 3d 121, 576 N.E.2d 288 (affirming summary judgment in favor of defendant cab-chassis manufacturer, where defendant had no way of knowing the ultimate user's needs and thus left certain safety equipment as optional, not standard); *Kokoyachuk v. Aeroquip Corp.*, 172 Ill. App. 3d 432, 526 N.E.2d 607 (1988) (summary judgment in favor of maker of refrigeration unit affirmed where there was nothing in record to suggest defendant had any control over the later assembly of the trailer into which the unit was installed). In short, defendant did everything it could possibly have done in this case—it had foreseen the very type of accident alleged to have occurred here and offered, as an option to its customers, an alternative safety device that would prevent such occurrences, an option that TJC and Pulmocare chose not to pursue. See *Curry v. Louis Allis Co.*, 100 Ill. App. 3d 910, 915, 427 N.E.2d 254, 258 (1981) (affirming summary judgment for component part manufacturer, suggesting it would be "absurd" to hold the maker of a component part liable because the assembler of the overall device chose not to install safety devices offered and sold by the component part manufacturer); *Willeford v. Mayrath Co.*, 7 Ill. App. 3d 357, 287 N.E.2d 502 (1972) (rejecting plaintiff's strict liability claim against the defendant manufacturer of elevator components, where elevator was ordered and assembled by third par-

ties who chose not to attach a safety shield made available by defendant).

When a defendant requests summary judgment, the plaintiff need not establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to judgment. *Malone,* 271 Ill. App. 3d at 845-46, 649 N.E.2d at 495. If a defendant supplies sworn facts that, if uncontradicted, warrant judgment in its favor as a matter of law, a plaintiff may not rest on her pleadings to create a genuine issue of material fact. *Carruthers v. B.C. Christopher & Co.,* 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459 (1974); *Cano v. Village of Dolton,* 250 Ill. App. 3d 130, 139, 620 N.E.2d 1200, 1207 (1993). Where the moving party's affidavits stand uncontradicted, the facts contained therein must be accepted as true (*Carruthers,* 57 Ill. 2d at 381, 313 N.E.2d at 460; *Champaign National Bank,* 273 Ill. App. 3d at 299, 652 N.E.2d at 854) and, therefore, the failure to oppose a summary judgment motion supported by affidavits by filing counteraffidavits in response is frequently fatal (*Fitzpatrick v. Human Rights Comm'n,* 267 Ill. App. 3d 386, 391, 642 N.E.2d 486, 491 (1994)).

In the present case, plaintiff has failed to present *any* factual basis that could potentially entitle her to judgment against defendant. The facts contained in Moerbe's affidavits were uncontradicted and must be accepted as true, and they establish defendant's right to judgment as a matter of law. Plaintiff's response to defendant's motion for summary judgment was supported by various irrelevant correspondence between plaintiff's and defendant's counsel, two unsworn, unverified statements of two occurrence witnesses, a copy of what appears to be the completed order form for the doors at issue, and a copy of one page from defendant's installation manual. None of these documents establish a genuine issue of material fact, and the unsworn, unverified statements cannot even be considered in reviewing the motion for summary judgment. *Cano,* 250 Ill. App. 3d at 140, 620 N.E.2d at 1207; *West v. Deere & Co.,* 201 Ill. App. 3d 891, 900, 559 N.E.2d 511, 518 (1990), *aff'd,* 145 Ill. 2d 177, 582 N.E.2d 685 (1991). Regardless of the fact that the statements were unverified, plaintiff has not suggested she needed additional time to secure the testimony of expert witnesses, and, in her appellate brief, she virtually concedes that no expert testimony would be needed to support her theory of liability. See *Glass v. Morgan Guaranty Trust Co.,* 238 Ill. App. 3d 355, 356, 359, 606 N.E.2d 384, 385, 386-87 (1992) (affirming summary judgment in favor of defendant manufacturer where plaintiff failed to identify any expert witness to establish any of the alleged design defects). Even if it were assumed that the accident occurred exactly as plaintiff theorized, there is simply no legal basis for finding defen-

dant strictly liable for her injuries, given the alternative safety device clearly shown in the record and the uncontradicted evidence defendant had nothing to do with the selection, installation, and maintenance of the door system.

■ For many of the same reasons, summary judgment on plaintiff's negligence count was also proper. For a plaintiff to prevail under a theory of design negligence, he must show that the quality of a particular product is insufficient and that the duty of care on the part of the manufacturer required it to design something safer for the user. *Carrizales v. Rheem Manufacturing Co.*, 226 Ill. App. 3d 20, 36, 589 N.E.2d 569, 580 (1991); *Kokoyachuk*, 172 Ill. App. 3d at 437, 526 N.E.2d at 609. Regardless of whether a plaintiff alleges strict liability for a design defect or design negligence, he has the burden of proving the existence of a defective condition in the product at the time it left the manufacturer's control. *Kokoyachuk*, 172 Ill. App. 3d at 437-38, 526 N.E.2d at 610. Since plaintiff has failed to show there was a genuine issue of material fact as to whether defendant's doors were defectively designed, summary judgment on the negligence count was similarly proper. See *Willeford*, 7 Ill. App. 3d 357, 287 N.E.2d 502 (rejecting plaintiff's negligent design claim against the defendant manufacturer of elevator components, where elevator was ordered and assembled by third parties who chose not to attach a safety shield made available by defendant).

■ In conclusion, various theories were brought up at oral argument as to how, from a factual standpoint, the mishap occurred in this case. An appeal from a summary judgment is neither the time nor the place to suggest new or different theories as to how an accident occurred and how liability thereby arose. We are limited to considering the pleadings, depositions, and admissions, together with any affidavits, that were properly before the trial court. *Champaign National Bank*, 273 Ill. App. 3d at 299, 652 N.E.2d at 853. Plaintiff is bound by the theory of liability propounded in the proceedings below—that the twin threshold beams passed through gaps in Elizabeth's walker and failed to stop the door from shutting on her. Any blame for failing to make the facts of the occurrence or the theory of liability more clear must fall on plaintiff. Regardless of what plaintiff's two occurrence witnesses proffered in their statements, both statements were unsworn and unverified and, therefore, could not be considered by the trial court when ruling on defendant's summary judgment motion and cannot now be considered by this court. *West*, 201 Ill. App. 3d at 900, 559 N.E.2d at 518. While no one disputes Elizabeth was injured, it is well settled that the fact that an injury has occurred does not in and of itself prove that a product is defec-

420

tive. *Depre*, 263 Ill. App. 3d at 118, 635 N.E.2d at 544; *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 1060, 473 N.E.2d 444, 451 (1984).

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

KNECHT, J., concurs.

JUSTICE COOK, dissenting:

Defendant has obtained summary judgment by trick, moving for summary judgment on the basis that plaintiff did not have sufficient evidence to prove her case but filing that motion before any substantial discovery had been completed.

There are two ways a defendant who moves for summary judgment may meet its initial burden of production. See 4 R. Michael, Illinois Practice § 40.3, at 271-72 (1989) (Civil Procedure Before Trial). One way is similar to the way a plaintiff would establish his right to summary judgment: by affirmatively showing that some element of the case must be resolved in defendant's favor. A defendant who uses that method is required to prove something it would not be required to prove at trial; at trial the burden would be on plaintiff to prove the element, not on defendant to disprove it. *Carruthers* is an example of this traditional method of proof. In *Carruthers* defendant presented affidavits that affirmatively established defendant was not in charge of the work. *Carruthers*, 57 Ill. 2d at 378, 313 N.E.2d at 458.

The second method was recognized in *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2553-54 (1986). In that case, Celotex, the movant, could not prove its products were not the cause of plaintiff's injuries. Celotex was nevertheless entitled to summary judgment because plaintiff, who had the burden of proof, likewise could not produce any evidence that a Celotex product was involved. *Celotex* held that a defendant satisfies its initial burden of production when it "point[s] out" there is an absence of evidence to support the plaintiff's position. *Celotex*, 477 U.S. at 325, 91 L. Ed. 2d at 275, 106 S. Ct. at 2554. The Illinois cases may require the defendant to do more than "point out" the absence of evidence. See 4 R. Michael, Illinois Practice § 40.3, at 272 (Civil Procedure Before Trial) ("may not be done by a mere recital in the defendant's affidavit to this effect"). In *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331 (1981), for example, defendant was able to produce a deposition of the plaintiff in which plaintiff stated she did not know why she fell, and answers to interrogatories in which plaintiff stated there were no other known eyewitnesses. Defendant's burden is

certainly reduced with a *Celotex*-type motion. A *Celotex*-type motion presents the rare situation of a motion for summary judgment where the burden of proof is essentially on the nonmovant.

In either case, *Celotex*-type motion or traditional motion, once defendant has satisfied its initial burden of production, the burden shifts to plaintiff to present some factual basis that would arguably entitle her to a judgment under the applicable law. *Kimbrough*, 92 Ill. App. 3d at 819, 416 N.E.2d at 333 (*Celotex*-type motion). Because defendant's initial burden is so high with a traditional motion for summary judgment, it is misleading to say there is generally a burden on plaintiff to present some factual basis in those cases. The plaintiff is not required to file counteraffidavits in response to a traditional motion. The only caveat is that, if defendant's affidavits are uncontested, the material facts therein must be accepted as true. *Carruthers*, 57 Ill. 2d at 380, 313 N.E.2d at 460.

When defendant files a *Celotex*-type motion, it is essential that plaintiff be given adequate time to gather evidence. *Celotex*, 477 U.S. at 322, 91 L. Ed. 2d at 273, 106 S. Ct. at 2552 ("adequate time for discovery"); *Webber v. Armstrong World Industries, Inc.*, 235 Ill. App. 3d 790, 795, 601 N.E.2d 286, 290 (1992) ("The discovery may establish that plaintiff does not have evidence of all the necessary elements of his case"); *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 126-27, 595 N.E.2d 177, 180 (1992) (objective of discovery to insure that judgments rest on the merits and not upon the skillful maneuvering of counsel).

> "Where a motion for summary judgment is made by a party on the basis that the respondent, who has the burden of proof, cannot prove a prima facie case, it is critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment is rendered against him." 4 R. Michael, Illinois Practice § 38.4, at 227 (1989) (Civil Procedure Before Trial).

See generally 4 R. Michael, Illinois Practice § 39.4, at 255 (1989) (Civil Procedure Before Trial); see also *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971) (summary judgment *if* what is contained in the pleadings and affidavits would have constituted all of the evidence before the court at trial and the court would have directed a verdict on that evidence).

Some decisions cite the language of section 2—1005 of the Code of Civil Procedure that a defendant may move for summary judgment "at any time" (735 ILCS 5/2—1005(b) (West 1994)) and refuse to consider the argument that a motion for summary judgment is premature unless there has been strict compliance with Supreme

Court Rule 191(b) (145 Ill. 2d R. 191(b)). Rule 191(b) provides that in order to continue a motion for summary judgment an affidavit of the party is required, naming the persons whose affidavits cannot be procured, showing why the affidavits cannot be procured, stating what affiant believes the persons would testify to if sworn, and giving reasons for that belief.

A plaintiff should not be required to comply with Rule 191(b) when a defendant files a *Celotex*-type motion. See 4 R. Michael, Illinois Practice § 39.5, at 255 (1989) (Civil Procedure Before Trial). It is one thing to require plaintiff to comply with Rule 191(b) when defendant has affirmatively shown that defendant is entitled to judgment, but it is quite another to require such compliance when defendant, at an early stage, merely suggests that plaintiff is unable to prove his case. Plaintiff may not know what the witnesses will testify to before discovery is taken and accordingly be unable to comply with Rule 191(b) at that time. Rule 191(b) was adopted before *Celotex*-type motions were widely used and was never intended to apply to them. See *Gresham v. Kirby*, 229 Ill. App. 3d 952, 954-55, 595 N.E.2d 201, 203 (1992); *Benner v. Bell*, 236 Ill. App. 3d 761, 768-69, 602 N.E.2d 896, 901 (1992).

The complaint in this case was filed in March 1995. Defendant's motion for summary judgment was filed in March 1996, *before the depositions of the occurrence witnesses had been taken.* The scheduling order required that the depositions of the occurrence witnesses be taken by June 30, 1996, and that plaintiff's expert be disclosed by July 30, 1996, and then deposed by August 30, 1996. Amazingly, defendant argued that the circuit court, in deciding the motion for summary judgment, should not consider statements that plaintiff had taken from the occurrence witnesses, because they were unsworn. The problem in this case was not the form of the statements, but the premature filing of the motion. The premature filing had additional effects. If plaintiff wanted to submit the affidavit of an expert, the timing of the motion required plaintiff to do so before she was required to decide on an expert and before the expert had an opportunity to read the depositions of the occurrence witnesses. I do not view plaintiff's argument that summary judgment should be denied even in the absence of expert testimony as a concession that plaintiff would not seek expert testimony.

When a person walked through the automatic sliding doors in this case, the following things happened. The motion sensor (supplied by others), mounted above the doors, detected motion in the detection zone in front of the doors. The motion sensor relayed that information to the control (supplied by defendant). The control caused the

sliding doors to open and held the doors open as long as the motion sensor detected motion. The doors contained a safety-beam system (supplied by defendant), which consisted of infrared light beams in the sliding doors at heights of 24 and 48 inches, which would detect anything in their paths, approximately the width of a pencil. When the dual beams detected anything, they would relay that information to the control, which would not allow the doors to close. Dual safety beams are standard equipment on defendant's sliding doors, but defendant provides an option, a threshold sonar scan system. Under this option the second beam is replaced with a threshold scan at a height of 30 inches, which apparently scans not just a pencil width, but a cylinder with a diameter of perhaps 15 inches between the sliding doors. There is no warning in defendant's materials that its standard equipment, the dual safety beams, is inadequate when the doors are used by slow-moving persons using walkers or that the threshold sonar scan system should be used in that situation. The overhead motion sensor is apparently a sonar system.

Defendant argues it is entitled to summary judgment under the traditional test. Defendant argues that it has proved that no act or omission of defendant was the proximate cause of plaintiff's injuries. That is not correct. We do not know how this accident happened. It is possible that an act or omission of defendant was the cause of this accident. The control, manufactured by defendant, may have failed to respond properly to information supplied by the motion sensor that there was motion in the detection zone. The safety-beam system, manufactured by defendant, may have failed to alert the control that something had broken the path of the safety beams. The safety-beam system may be an improper design where people with walkers use the sliding doors, and defendant may have failed to warn that some other device was necessary. The settings for the motion sensor, control, and safety-beam system, recommended by defendant, may have been inadequate.

The majority recognizes that when ruling on a motion for summary judgment the court must view all evidence in the light most favorable to the nonmovant. 289 Ill. App. 3d at 413. The majority violates that rule here. The majority states that defendant did everything it could have done in this case and that it offered an option (the threshold sonar scan system) that would have prevented the accident in this case. 289 Ill. App. 3d at 417. I see nothing in defendant's affidavits that would support those conclusions. The majority states (289 Ill. App. 3d at 416) that "there was nothing defective in the design of the product manufactured by the defendant." In the absence of expert testimony, I do not understand how that state-

ment can be made. The majority states (289 Ill. App. 3d at 419) there is "uncontradicted evidence defendant had nothing to do with the selection, installation, and maintenance of the door system." Defendant's service and installation manuals certainly seem to make recommendations how its doors should be selected, installed, and maintained. The installer is a defendant in this case, and none of the installer's personnel had been deposed at the time of the motion, although the installer had answered plaintiff's (not defendant's) interrogatories.

The majority states (289 Ill. App. 3d at 418) that the facts contained in Moerbe's affidavits establish defendant's right to summary judgment as a matter of law. Moerbe is defendant's vicepresident of sales and marketing. The only clear fact in Moerbe's affidavit was that defendant did not supply the motion detectors used on the Pulmocare project. Moerbe stated that defendant was not aware that components (apparently motion detectors) from BEA Corporation (BEA) and C&K Systems, Inc. (C&K), would be added to its automatic door, but defendant had to know that motion detectors would be supplied by someone. It appears that defendant sometimes supplied BEA and C&K motion detectors itself. Moerbe stated that defendant was not involved in deciding what the adjustments should be for closing speed, closing force, and time delay. In the very next sentence, however, Moerbe admits that defendant makes recommendations as to these settings. A review of defendant's service manual and installation instructions indicates that defendant provides very specific directions regarding the installation of its doors and that installers have little, if any, discretion in the final result. Moerbe stated that defendant was "never advised of the traffic that frequented Pulmocare," and that may be true, but certainly defendant was aware that persons with walkers sometimes used its automatic doors. Defendant's manual contained an illustration of such a use.

The general rule is that the occurrence of an injury, in and of itself, is insufficient to show the existence of a product defect. However, a *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that, in the absence of abnormal use or reasonable secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. *American Family Insurance Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 628-29, 585 N.E.2d 1115, 1119 (1992). Automatic sliding doors are not reasonably expected to close on people using them. It is true that the manufacturer of a component part need not anticipate every possible

use of his product. The manufacturer of a ventilation system that can be used to discharge stale air need not anticipate problems that might occur when the system is used to discharge poisonous gases. See *Sparacino*, 227 Ill. App. 3d 990, 592 N.E.2d 431. It is difficult, however, to characterize defendant in this case as the unknowing manufacturer of a component part. Defendant has not shown any abnormal use of these doors, or secondary causes, such as improper settings made by the installer.

The majority indicates that the complaint alleged only design defects, not manufacturing defects or a failure to warn. 289 Ill. App. 3d at 413, 414. The *amended* complaint clearly alleges manufacturing defects. Count II of the *original* complaint says that defendant designed and/or manufactured the door with components that did not have adequate service life and failed to supply adequate instructions. We should not be overly technical with the pleadings. A summary judgment is not a substitute for a motion to dismiss. See *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 405-06, 312 N.E.2d 605, 609 (1974).