# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Van Gelderen v. Hokin*, 2011 IL App (1st) 093152

---

| | |
|---|---|
| Appellate Court Caption | DONALD VAN GELDEREN and ARLENE VAN GELDEREN, Plaintiffs-Appellees, v. DAVID HOKIN, Defendant-Appellant (Brian A. Schroeder, Contemnor-Appellant). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-09-3152, 1-09-3283 cons. |
| Filed | July 29, 2011 |
| Rehearing denied | November 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion for judgment *n.o.v.* in plaintiffs' premises liability action for the injuries plaintiff suffered when he fell down the basements stairs at defendant's residence was affirmed with the damages reduced by one-half based on plaintiff's contributory negligence where the evidence was sufficient to support the jury's finding that plaintiff's injury was caused by an unreasonably dangerous condition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-8665; the Hon. Alexander P. White, and the Hon. Sheldon A. Harris, Judges, presiding. |
| Judgment | No. 1-09-3152, Order vacated.<br>No. 1-09-3283, Order affirmed. |

Counsel on          David A. Novoselsky and Brian A. Schroeder, both of Novoselsky Law
Appeal              Offices, of Chicago, for appellant.

Elizabeth A. Kaveny and David R. Nordwall, of Kaveny Law Firm, LLC,
of Chicago, for appellees.

Panel               JUSTICE CAHILL delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Presiding Justice Garcia dissented, with opinion.

## OPINION

¶ 1      Defendant David Hokin appeals an order denying his motion for judgment notwithstanding the verdict entered in a premises liability action brought by plaintiff Donald Van Gelderen and his wife, Arlene Van Gelderen (appeal No. 1-09-3283). Defendant's counsel Brian A. Schroeder appeals an order finding him in contempt of court for refusing to submit to plaintiff's citation to discover assets proceeding until the trial court ruled on defendant's motion for judgment notwithstanding the verdict (appeal No. 1-09-3152). The appeals have been consolidated.

¶ 2      On November 8, 2004, plaintiff was at defendant's home, installing automated window coverings. As plaintiff was leaving the house that evening, he fell down a flight of stairs and was injured. Plaintiff filed a premises liability action against defendant, alleging the location of the stairs in relation to the door through which he attempted to leave constitutes an unreasonably dangerous condition that defendant, through the use of reasonable care, should have known about and protected against.

¶ 3      Defendant moved for summary judgment, arguing he had no duty to protect against plaintiff's injury because the stairs on which plaintiff fell are not unreasonably dangerous. The trial court denied defendant's motion and the case proceeded to trial. The following evidence was presented to the jury.

¶ 4      Plaintiff was at defendant's home on the day of the injury with Christopher Niven, a sales manager for a window covering manufacturer doing business with plaintiff. Plaintiff and Niven entered defendant's home through a side entrance. The parties dispute whether plaintiff was required to use this entrance; it is undisputed that plaintiff had used the entrance before without incident.

¶ 5      The door to defendant's side entrance opens into the house. From outside, the door opens from the left and swings to the right, where it is stopped by an interior wall at a little more than a 90-degree angle. An entrant has two options on entering. He can either turn to his left and proceed down a stairwell leading to a basement, or he can proceed forward through a

hallway that leads to defendant's mudroom. The distance from the inside of the door opening closest to where the stairwell is located and the first riser is five inches. In other words, to the extent the stairwell has a landing separate and apart from the hallway floor, it is five inches in depth.

¶ 6        When leaving defendant's house through the side entrance on November 8, plaintiff grabbed the door handle, which was located on his right-hand side, with his left hand. Plaintiff alleged that as he pulled the door open toward him, he was forced to step to his right, where the basement stairwell was located. Plaintiff lost his balance and fell down the stairwell. Plaintiff did not remember falling.

¶ 7        Niven testified that he did not see the basement stairwell when he entered defendant's home on November 8. Niven followed plaintiff out later that day and was standing behind plaintiff when the accident occurred. Niven testified the accident could have been avoided had the door handle been located on plaintiff's left, suggesting that plaintiff would not have fallen had the door been hinged on the opposite side so as to swing open toward the stairwell. Defendant objected to this testimony, arguing it had not been properly disclosed under Supreme Court Rule 213 (eff. Jan. 1, 2007). The trial court overruled the objection.

¶ 8        Plaintiff's architecture expert Richard Cook testified that, in his opinion, the location of the stairwell in relation to the door, combined with the manner in which the door opens, creates an unreasonably dangerous condition. He explained that a person's natural tendency when opening a door toward himself is either to step backwards, which Cook described as cumbersome, or step to the side where the door is opening. A person, like plaintiff here, who steps to the right when leaving defendant's home through the side entrance door, has five inches before the first riser. Cook testified that in his opinion, five inches is not enough space to move around the door without falling down the stairwell. Cook admitted on cross-examination that there were no scientific studies that would confirm his opinion and that the layout of defendant's side entrance did not violate local building codes or customary rules of design.

¶ 9        Michael Hershenson, the architect who built defendant's house, testified on behalf of defendant. Hershenson said the applicable building code prohibits doors from opening over stairs. The layout of defendant's side entrance conforms with this code and was approved by the village. Hershenson stated that, in his opinion, the stairs do not constitute an unreasonably dangerous condition.

¶ 10       The case went to the jury, which found by special interrogatory that plaintiff's injury was caused by an unreasonably dangerous condition that defendant, through the exercise of reasonable care, should have known about and guarded against. The jury also found that plaintiff was 50% contributorily negligent and reduced damages by one-half. The net amount awarded plaintiff was a little over $1.5 million.

¶ 11       The trial court entered judgment on the verdict on May 11, 2009. On May 22, 2009, plaintiff issued a citation to discover assets. On June 5, 2009, defendant filed a posttrial motion for judgment notwithstanding the verdict. Defendant then moved to stay plaintiff's citation proceedings until the court decided his posttrial motion.

¶ 12       The trial court denied defendant's motion to stay the citation proceedings on October 8,

2009. Defense counsel Shroeder advised the court that he respectfully disagreed with its decision and asked for a finding of contempt to provide immediate appeal of the issue. The trial court entered the contempt order, fining Shroeder $10. A little over a month later, on November 25, 2009, the trial court denied defendant's motion for judgment notwithstanding the verdict.

¶ 13　　Plaintiff first argues that the trial court erred in denying his motion for judgment notwithstanding the verdict because plaintiff failed to establish the duty element of his claim. We review this issue *de novo*. See *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178, 854 N.E.2d 635 (2006) (whether trial court properly denied motion for judgment notwithstanding the verdict presents a question of law that is reviewed *de novo*); see also *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388-89, 706 N.E.2d 441 (1998) (whether a duty exists is a question of law and is reviewed *de novo*).

¶ 14　　Where, as here, a plaintiff obtains recovery against a defendant under a theory of negligence, such as premises liability, judgment notwithstanding the verdict must be granted if the defendant did not owe the plaintiff a duty. See *Washington v. City of Chicago*, 188 Ill. 2d 235, 238-39, 720 N.E.2d 1030 (1999). "That is so because '[u]nless a duty is owed, there is no negligence' [citation], and plaintiffs cannot recover as a matter of law [citation]." *Washington*, 188 Ill. 2d at 239.

¶ 15　　The existence of a duty is a question of law turning on whether, based on the parties' relationship to one another, public policy should impose a duty on the defendant to act with reasonable care toward the plaintiff. *LaFever*, 185 Ill. 2d at 388-89. Factors to consider in deciding whether to impose a duty are: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the burden on the defendant to protect against the injury; and (4) the consequences of placing that burden on the defendant. *LaFever*, 185 Ill. 2d at 388-89. "When, as here, plaintiff alleges he was injured by a condition on defendant's property ***, we decide the foreseeability prong of the duty test by reference to section 343 of the Restatement (Second) of Torts." *LaFever*, 185 Ill. 2d at 389.

¶ 16　　Section 343 of the Restatement reads:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343 (1965).

See also *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465 (1976) (section 343 of the Restatement (Second) of Torts "correctly states the settled law regarding the liability of possessors of land to invitees").

¶ 17　　Defendant argues he did not owe plaintiff a duty of care because the location of the stairs next to the side door does not involve an unreasonable risk of harm. In support, defendant

relies on *Alcorn v. Stepzinski*, 185 Ill. App. 3d 1, 540 N.E.2d 823 (1989), and *Glass v. Morgan Guaranty Trust Co.*, 238 Ill. App. 3d 355, 606 N.E.2d 384 (1992).

¶ 18    Like this case, the plaintiff in *Alcorn* fell down a basement stairwell located adjacent to a door that opened into a hallway. *Alcorn*, 185 Ill. App. 3d at 3. The stairwell was located on the plaintiff's left side as she entered the house. *Alcorn*, 185 Ill. App. 3d at 3. The area of the hallway floor directly in front of the stairwell was 38 inches wide and about 53 inches long. *Alcorn*, 185 Ill. App. 3d at 3. There was no separate landing for the stairwell. *Alcorn*, 185 Ill. App. 3d at 3. The plaintiff testified that as she entered the defendant's home, she placed her right foot on the hallway floor and her left foot about two inches over the edge of the top step. *Alcorn*, 185 Ill. App. 3d at 3. The plaintiff lost her balance and fell down the stairwell to her left. *Alcorn*, 185 Ill. App. 3d at 3.

¶ 19    The trial court entered summary judgment for the defendant in *Alcorn*, holding that the defendant had no duty to warn or to enclose the stairwell to prevent the plaintiff's injury. *Alcorn*, 185 Ill. App. 3d at 3. This court affirmed, relying in large part on the fact that the plaintiff failed to present expert testimony "to suggest some danger or hazard beyond the ken of an ordinary person." *Alcorn*, 185 Ill. App. 3d at 4. The court explained:

"The plaintiffs neither allege nor establish factually anything extraordinary about the stairs in question. There is nothing contained in the record to suggest that the stairs were improperly designed, improperly or inadequately lighted, covered with a foreign substance, or that they were slippery. In the vernacular, they were just stairs." *Alcorn*, 185 Ill. App. 3d at 6.

The court held that while all stairs present some risk of harm, the risk of harm must be shown to be unreasonable to give rise to a duty of care under the law. *Alcorn*, 185 Ill. App. 3d at 6. With respect to the location of the stairwell in relation to the door, the court said according to its research, "the configuration of a stairway may be dangerous only if the configuration masks or obscures the stairs in a way which prevents the invitee from becoming aware of the open and obvious configuration of the stairway." *Alcorn*, 185 Ill. App. 3d at 7. The court said "[t]o hold otherwise would make every landowner an absolute insurer for all injuries occurring on his stairs." *Alcorn*, 185 Ill. App. 3d at 7.

¶ 20    The court in *Glass* cited *Alcorn* for the proposition that stairs, by their very nature, create a risk of injury. *Glass*, 238 Ill. App. 3d at 357-58. The plaintiff there was injured inside a food court while carrying food down a flight of stairs to an area containing additional seating. *Glass*, 238 Ill. App. 3d at 356. Like the plaintiff in *Alcorn*, the plaintiff in *Glass* did not present expert testimony to suggest that the stairs on which she fell were more dangerous than other stairs. *Glass*, 238 Ill. App. 3d at 358. The court affirmed summary judgment for the defendant, finding, in reliance on *Alcorn*, that the plaintiff did not present evidence showing the stairs were unreasonably dangerous. *Glass*, 238 Ill. App. 3d at 357-58.

¶ 21    Defendant relies on *Alcorn* and *Glass* to argue there was insufficient evidence here to establish that the stairs on which plaintiff fell were more dangerous than other stairs. Defendant emphasizes that plaintiff presented no evidence that his stairwell was improperly designed, masked or obscured. We agree there was no such evidence. But, as plaintiff points out in his response brief, he did present expert testimony that the stairwell was unreasonably

-5-

dangerous. It is this testimony that distinguishes this case from *Alcorn* and *Glass*.

¶ 22    Cook testified that, in his opinion, the location of the stairwell in relation to the door, combined with the manner in which the door opens, creates an unreasonably dangerous condition. Cook explained that when a person opens a door toward himself, the natural tendency is to step out of the way of the door by going either backwards or to the side where the door is opening. It was Cook's opinion that five inches was not enough room to protect from injury people like plaintiff, who step to the right when leaving through defendant's side entrance door.

¶ 23    It is reasonable to conclude from Cook's testimony that the configuration of defendant's side entrance constitutes an unreasonably dangerous condition. In reviewing a judgment notwithstanding the verdict, this court may not substitute its judgment for that of the jury. *York*, 222 Ill. 2d at 178. Rather, we are limited to deciding whether the evidence, when considered in a light most favorable to the plaintiff, fails to establish a necessary element of the plaintiff's claim. See *York*, 222 Ill. 2d at 178. The evidence here was sufficient to support the jury's finding that plaintiff's injury was caused by an unreasonably dangerous condition on defendant's property.

¶ 24    Defendant argues in the alternative that he should have been relieved of the duty to protect plaintiff because the risk of injury presented by the stairwell was open and obvious. Plaintiff responds that defendant waived this argument by failing to raise it in his posttrial motion for judgment notwithstanding the verdict. See Ill. S. Ct. R. 366 (eff. Feb. 1, 1994) (in jury cases, "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion"). Defendant replies that he did, in fact, raise the issue in his posttrial motion.

¶ 25    We have read the motion. Defendant says therein that the stairs were open and obvious to plaintiff, who had used the side entrance door on earlier occasions without incident. Defendant did not, however, specifically address what has become known in this state as the open and obvious danger doctrine. We also note that the focus at trial was whether the condition causing plaintiff's injury was unreasonably dangerous. The jury was not instructed on the open and obvious exception to liability or directed to make a special finding on the open and obvious nature of the condition. This appeal marks the first time defendant argues in the alternative that his liability is negated as a matter of law under the open and obvious exception to the general duty owed by landowners to invitees on their property. We conclude the issue is waived on these grounds.

¶ 26    Even assuming the issue were properly preserved for review, the evidence fell short of establishing that the condition causing plaintiff's injury was open and obvious as a matter of law. See *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 664, 837 N.E.2d 922 (2005) (waiver is an admonition to the parties, not a limitation on the court's jurisdiction).

¶ 27    The open and obvious doctrine addresses the first two factors of the traditional duty analysis: the likelihood and reasonable foreseeability of the injury. See *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 456, 665 N.E.2d 826 (1996). The likelihood and foreseeability of an injury are considered slight, negating a duty to protect, when the

condition is open and obvious. *Bucheleres*, 171 Ill. 2d at 456. This is so because it is assumed that those who encounter an open and obvious danger will appreciate and avoid risks associated with that danger. *Bucheleres*, 171 Ill. 2d at 456. A condition presents an open and obvious danger to the extent the risk is apparent to, and can be appreciated by, " 'a reasonable [person], in the [plaintiff's position] exercising ordinary perception, intelligence, and judgment.' " *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38, 44, 768 N.E.2d 46 (2002) (quoting *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435, 566 N.E.2d 239 (1990)).

¶ 28    We believe that "[w]here a court cannot conclude as a matter of law that a condition poses an open and obvious danger ' "the obviousness of the danger is for the jury to determine." ' " *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 18, 938 N.E.2d 584 (2010) (quoting *Duffy v. Togher*, 382 Ill. App. 3d 1, 8, 887 N.E.2d 535 (2008), quoting *Klen v. Asahi Pool, Inc.*, 268 Ill. App. 3d 1031, 1044, 643 N.E.2d 1360 (1994)); but see *Duffy*, 382 Ill. App. 3d at 20-21 (Garcia, J., dissenting) (an expert opinion without factual support cannot, alone, create a question of fact). The evidence here was insufficient to conclude as a matter of law that the condition causing plaintiff's injury was open and obvious.

¶ 29    This case is similar to *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 594 N.E.2d 313 (1992). The plaintiff there was electrocuted by a power line while painting a billboard on the defendant's property. *American National*, 149 Ill. 2d at 17-18. The defendant argued it did not owe the plaintiff a duty of care because the power line was open and obvious. *American National*, 149 Ill. 2d at 26. Our supreme court held that testimony by the plaintiff's coworker that he had not seen the power line presented a question of fact as to whether or not the danger was open and obvious. *American National*, 149 Ill. 2d at 27.

¶ 30    Similar evidence was presented here. Niven testified he did not see the basement stairwell when he entered defendant's home with plaintiff on the day of the incident. Under *American National*, Niven's testimony creates an issue of fact as to whether the condition causing plaintiff's injury was open and obvious. For this reason, we reject defendant's argument that he is entitled to judgment notwithstanding the verdict under the open and obvious doctrine.

¶ 31    Defendant next argues in the alternative that he is entitled to judgment notwithstanding the verdict under the assumption of risk doctrine. This issue is waived for the same reasons we held defendant waived his open and obvious danger argument. Waiver aside, there can be no assumption of risk as a matter of law if the danger is not open and obvious as a matter of law.

¶ 32    It appears to this court that the jury considered the open and obvious nature of the condition and plaintiff's assumption of the risk, for it found plaintiff contributorily negligent. See *Ward v. K mart Corp.*, 136 Ill. 2d 132, 143, 554 N.E.2d 223 (1990) (the open and obvious nature of a condition is properly considered as a type of contributory negligence or assumption of risk). The jury concluded, however, that the evidence was not sufficient to negate defendant's liability. It is not a function of this court to reweigh the evidence or substitute our judgment for that of the jury. See *York*, 222 Ill. 2d at 178.

¶ 33    Defendant next challenges the admission of Niven's opinion testimony that plaintiff's injury could have been avoided had the door handle been located on plaintiff's right-hand side. Defendant argues his objection to this testimony should have been sustained under Rule 213 (eff. Jan. 1, 2007), because plaintiff did not make a showing for the record that the opinion was disclosed before trial. We review this issue for an abuse of discretion. See *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 294, 775 N.E.2d 964 (2002) ("[a]dmission of evidence pursuant to Rule 213 is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion").

¶ 34    Rule 213(f)(1) requires parties to disclose before trial the names of all lay witnesses and the subjects on which they will testify. Ill. S. Ct. R. 213(f)(1) (eff. Jan. 1, 2007). Subjects not disclosed under Rule 213(f)(1) or testified to at a discovery deposition cannot be testified to at trial. Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007). "[U]pon objection at trial, the burden is on the proponent of the witness to prove the information was provided in a Rule 213(f) answer or in the discovery deposition." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2007).

¶ 35    Defendant asks this court to find error in the trial court's admission of Niven's opinion, over defendant's objection, without requiring plaintiff to make a showing for the record that Niven stated the opinion at his discovery deposition. "The purpose behind Rule 213 is to avoid surprise and to discourage tactical gamesmanship." *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 111, 806 N.E.2d 645 (2004). Defendant did not argue in the trial court, nor does he argue on appeal, that he was surprised by Niven's opinion. We find no abuse of discretion under these facts.

¶ 36    Defendant argues next that the trial court erred in finding Cook qualified to render an expert opinion on whether defendant's side entrance constitutes an unreasonably dangerous condition. We review this issue for an abuse of discretion. See *Thompson v. Gordon*, 221 Ill. 2d 414, 428, 851 N.E.2d 1231 (2006) (decision whether to admit expert testimony is within the sound discretion of the trial court).

¶ 37    "A person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson*, 221 Ill. 2d at 428. Qualifications giving rise to a witness's ability to give an expert opinion in a particular case can include practical experience, scientific study, education, training and research. *Thompson*, 221 Ill. 2d at 428-29 (citing *People v. Miller*, 173 Ill. 2d 167, 186, 670 N.E.2d 721 (1996)). "An expert need only have knowledge and experience beyond that of an average citizen." *Thompson*, 221 Ill. 2d at 429.

¶ 38    Defendant argues Cook's testimony should not have been admitted because his qualifications did not make him an expert on whether defendant's side entrance posed an unreasonable risk of injury. Defendant cites Cook's testimony on cross-examination that he had no formal training on how people go in and out of doorways.

¶ 39    Cook's lack of formal training does not disqualify him from rendering an expert opinion. See *Thompson*, 221 Ill. 2d at 428-29. Cook testified he had over 40 years of experience as an architect and said his experience included consideration of traffic flow on design. This testimony was sufficient under *Thompson* to support the trial court's admission of Cook as

-8-

an expert.

¶ 40    Defendant next argues the trial court erred in admitting evidence from which the jury could infer defendant's wealth and the ease in which defendant could have guarded against plaintiff's injury. Again, our review of evidentiary rulings is limited to whether the trial court abused its discretion. See *Gunn v. Sobucki*, 216 Ill. 2d 602, 609, 837 N.E.2d 865 (2005).

¶ 41    Defendant contends the trial court should have excluded evidence that his house is located in an affluent neighborhood and has just under 16,000 square feet of living space, a large backyard and a swimming pool. Defendant cites *Stathis v. Geldermann*, 295 Ill. App. 3d 844, 862, 692 N.E.2d 798 (1998), where the court said: "Evidence offered for the sole purpose of emphasizing a party's wealth or poverty is immaterial and improper when it appeals to the prejudice of the jury."

¶ 42    As plaintiff points out in his response brief on appeal, defendant himself introduced the evidence he now complains of in his opening argument to the jury. Defense counsel told the jury that defendant found the original design for his house too small, purchased the lot next door and instructed his architect to design a bigger house. Defense counsel also told the jury that the house was located in Glencoe. Defendant does not suggest that the evidence elicited by plaintiff was any more prejudicial than that already presented to the jury by defense counsel during opening argument. Nor does he argue the evidence was elicited for the purpose of establishing culpability. We find no abuse of discretion on these facts.

¶ 43    Defendant next argues the trial court erred in admitting evidence that defendant blocked the stairwell to his basement with a baby gate after plaintiff's injury. Defendant maintains the evidence was improperly admitted under *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 654, 906 N.E.2d 663 (2009), which held that evidence of subsequent remedial action is inadmissible to show prior negligence. Plaintiff responds by arguing defendant opened the door to such evidence by testifying that he has not changed anything about the side entrance to his house and that no one since plaintiff has been injured by falling down the basement stairs.

¶ 44    We agree with plaintiff that evidence of the baby gate was proper impeachment. See *Herzog v. Lexington Township*, 167 Ill. 2d 288, 302, 657 N.E.2d 926 (1995) (evidence of subsequent remedial measures taken by a defendant may be admissible for the purpose of impeachment). Defendant testified he did nothing since plaintiff's injury to change the configuration of the side entrance to his house. Placement of a baby gate in front of the basement stairwell contradicts this testimony and is impeaching. While we agree with plaintiff that evidence of the baby gate was prejudicial, we believe the probative value to the jury with respect to defendant's credibility outweighed such prejudice. The trial court did not abuse its discretion in allowing the evidence.

¶ 45    For the reasons stated above, we affirm the judgment of the trial court in appeal No. 1-09-3283. We now turn our attention to appeal No. 1-09-3152, challenging the trial court's order of contempt against defense counsel Schroeder.

¶ 46    As already explained, the trial court issued an order of contempt against Schroeder so that defendant could take immediate appeal of the court's order denying him a stay on plaintiff's citation to discover assets until the motion for judgment notwithstanding the verdict was

decided. Having affirmed the trial court's order denying judgment notwithstanding the verdict, whether plaintiff's citation proceedings can proceed is now a moot issue.

¶ 47 "An [issue] is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23, 759 N.E.2d 509 (2001). This court's jurisdiction is restricted to deciding issues that present an actual controversy. See *Steinbrecher*, 197 Ill. 2d at 523. For this reason, we typically do not render judgment on issues that have become moot. See *Steinbrecher*, 197 Ill. 2d at 523.

¶ 48 Whether plaintiff's citation to discover assets proceeding should be put on hold until a final decision is rendered on defendant's motion for judgment notwithstanding the verdict no longer presents an actual controversy between the parties. A decision on the issue by this court would have only an advisory effect. Accordingly, we do not consider the propriety of the trial court order denying defendant's motion to stay the citation proceedings. That issue is dismissed as moot. See *People ex rel. Black v. Dukes*, 96 Ill. 2d 273, 278, 449 N.E.2d 856 (1983) (dismissing appeal as moot).

¶ 49 We do, however, have jurisdiction over the trial court's order of contempt against Schroeder. See Ill. S. Ct. R. 304(b)(5) (eff. Jan. 1, 2006). A contempt proceeding is an appropriate method for testing the correctness of orders entered in a collateral proceeding such as the one brought by plaintiff here to discover assets. See *In re Marriage of Decker*, 153 Ill. 2d 298, 325, 606 N.E.2d 1094 (1992). We have reviewed defense counsel's argument that plaintiff's citation proceedings should have been stayed pending disposition of defendant's motion for judgment notwithstanding the verdict. The argument is supported by law and clearly made in good faith. For this reason, we vacate the trial court order holding Schroeder in contempt. See *People v. Siegel*, 94 Ill. 2d 167, 171, 445 N.E.2d 762 (1983) (a finding of contempt against an attorney will not stand if the attorney acted in good faith to serve his client and the court).

¶ 50 The judgment of the circuit court denying defendant's motion for judgment notwithstanding the verdict in appeal No. 1-09-3283 is affirmed. The circuit court order holding defense counsel in contempt in appeal No. 1-09-3152 is vacated.

¶ 51 No. 1-09-3152, Order vacated.

¶ 52 No. 1-09-3283, Order affirmed.

¶ 53    PRESIDING JUSTICE GARCIA, dissenting:

¶ 54    On occasion, the circuit court wrongly denies a defendant's motion for summary judgment that claims no duty of care existed in a negligence action. When that happens, a jury decides a case that should have never reached it. See *Washington v. City of Chicago*, 188 Ill. 2d 235, 236-37, 720 N.E.2d 1030 (1999) (no "duty to construct a road median in such a way as to make it safe for use by emergency road vehicles"). The serious question of whether the defendant owed the plaintiff a duty of care in this case may explain the jury's decision to find the plaintiff responsible for 50% of his injuries. I submit, however, that the defendant was entitled to more than a split decision; he was entitled to a judgment notwithstanding the verdict (judgment *n.o.v.*) because the proximity of the descending stairway to the side door, from where the plaintiff sought to leave the defendant's home, did not give rise to a duty of care. Nothing about the stairway presented an unreasonable risk of danger to the plaintiff to permit consideration by the jury. I append a photograph of the doorway and descending stairway, identified as plaintiff's demonstrative exhibit No. 6, to illustrate my point. Respectfully, I cannot agree with the majority's decision to affirm the jury's verdict.

¶ 55    At the end of the fourth day of working at the defendant's home, the then 69-year-old plaintiff was about to exit the defendant's home through the side door, which he claims he was told he had to use. The plaintiff arrived at the side door from the hallway through the mudroom, with a companion walking behind him carrying a ladder. The plaintiff reached for the knob of the side door and began to pull the door open. Rather than step backward as he opened the door, he moved to the right of the door to position himself on the five inches of landing available beyond the sweep of the door. As he attempted to get the door past his body, the plaintiff had his back to the descending basement stairway immediately behind him. The plaintiff fell backwards, but at trial he was unable to recall falling or explain why he fell.

¶ 56    In his amended complaint, the plaintiff asserted a single count of negligence in which he alleged: "8. [W]hen entering or exiting through the side door, one was forced to encounter and walk past the basement stairs." As his first allegation of negligence, the plaintiff asserted, "18. *** David Hokin *** allowed a dangerous condition to be created by designing and locating the basement stairs in the mudroom too close to the entrance/exit of the house." As to his own actions, the plaintiff alleged, "19. [W]hen Donald Van Gelderen opened the side door and stepped out of the way of the door, it *forced* him to step backwards, and he fell backwards down the basement stairs." (Emphasis added.)

¶ 57    The jury awarded the plaintiff more than $3 million, which was cut in half because the plaintiff was 50% responsible for the accident. The circuit court denied the defendant's motion for judgment *n.o.v.*, much as it had denied the defendant's three pretrial motions for summary judgment, each contending he owed no duty of care as a matter of law to the plaintiff. In its memorandum opinion and order denying the defendant's posttrial motion, the circuit court summarized the plaintiff's claim: "Plaintiff claimed that the unprotected stairway being no more than five (5) inches from the side door presented an unreasonably dangerous condition on the defendant's premises that the defendant knew or should have known existed."

¶ 58　　"Where plaintiffs have obtained recovery against a defendant based on negligence \*\*\* judgment notwithstanding the verdict is required if the defendant did not owe the plaintiff[ ] a duty [of care]. [Citation.] That is so because '[u]nless a duty is owed, there is no negligence.' " *Washington*, 188 Ill. 2d at 238-39 (quoting *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26, 594 N.E.2d 313 (1992)). "A motion for judgment *n.o.v.* presents a question of law which we review *de novo*." *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 409, 741 N.E.2d 1055 (2000).

¶ 59　　The law holds that stairs present an open and obvious danger. *Hastings v. Exline*, 326 Ill. App. 3d 172, 176-77, 760 N.E.2d 993 (2001). Because the risk of injury is inherent in stairs, a duty of care owed to an invitee to a defendant's home has been recognized in very limited circumstances to avoid placing an unreasonable burden on a homeowner:

> "[T]he configuration of a stairway may be dangerous only if the configuration masks or obscures the stairs in a way which prevents the invitee from becoming aware of the open and obvious configuration of the stairway. [Citations.]
>
> 　　\*\*\* We are unaware of any authorities that have held that the owner or occupant of a building must provide a certain kind of stairway for persons or be held guilty of negligence. [Citation.] To hold otherwise would make every landowner an absolute insurer for all injuries occurring on his stairs." *Alcorn v. Stepzinski*, 185 Ill. App. 3d 1, 7, 540 N.E.2d 823 (1989).

¶ 60　　The circumstances that give rise to a duty of care for stairs in commercially owned property is similarly limited: "The record in the pending case demonstrates that Glass's fall on the stairs was not attributable to poor lighting; unsafe design; a physical defect of or condition on the steps themselves; concealment of changing elevations, or any other circumstances that might lead to a triable issue of fact as to the existence of any unreasonably dangerous condition." *Glass v. Morgan Guaranty Trust Co.*, 238 Ill. App. 3d 355, 361, 606 N.E.2d 384 (1992).

¶ 61　　To distinguish *Alcorn* and *Glass*, the plaintiff points out that in those cases no expert witness was offered by the plaintiff before summary judgment was granted to each defendant. "Unlike in *Alcorn* and *Glass*, the jury was presented with expert testimony which showed that these were not 'just stairs.' " That is certainly true. However, I am aware of no authority in Illinois that holds that expert testimony alone may give rise to a legal duty of care owed a defendant, as the plaintiff appears to urge. Nor do I agree that the affirmance of summary judgment in *Alcorn* and *Glass* turned on the absence of expert testimony in each case.

¶ 62　　Illinois courts have long held that whether a duty of care exists in a negligence action presents a question of law for a court to answer. *Washington*, 188 Ill. 2d at 239. I do not doubt that an expert's testimony may assist a court to find a duty of care when, for example, the claim is made that "the width of the rail made [the stairs] unreasonably dangerous because a human hand could not grasp it while falling." *Glass*, 238 Ill. App. 3d at 358.

¶ 63　　In his brief, the plaintiff claims expert testimony here supports the existence of a duty of care.

> "[The plaintiff] presented expert testimony which explained how the configuration of the door and stairs created an unreasonably dangerous condition. [His] architectural expert[ ]

testified that the close proximity of the stairs to the door which opened from right to left created an unreasonably dangerous condition, as persons inside the house who opened the door to exit the property could step to the right and fall down the stairs. *** [The defendant's expert on cross-examination admitted] it was human nature for a person opening a door that swings from right to left to step to the right as he tried to go through the door."

¶ 64    I find the expert testimony the plaintiff highlights offers nothing more than a rationalization for the circuit court's decision to allow the jury to hear this case. The highlighted testimony from the experts in this case is not analogous to an expert's objective testimony that "engineering and architectural standards *** were violated," as the *Glass* court posited. *Id.* at 359.

¶ 65    Nor is *Alcorn* distinguishable as the plaintiff claims. In that case, the court answered the question of whether the existence of an open descending stairway immediately adjacent to an entrance gives rise to a duty of care in the negative. There, the plaintiff followed the defendant homeowner through the garage doorway into the kitchen. *Alcorn*, 185 Ill. App. 3d at 2-3. "The stairway to the basement is immediately adjacent to the door to the garage and along the left wall of the hallway as a person enters the premises from the garage." *Id*. at 3. The *Alcorn* court might just as well have been describing the interior of the instant defendant's home.

¶ 66    As one enters the instant defendant's home from the side entrance, the descending stairway to the basement is immediately to the left. The side door opens inward from left to right, with the door reaching its full opening at about 90 degrees because the hallway wall, which leads to the mudroom, prevents the door from opening to 180 degrees. Much as in *Alcorn*, there is no "separate landing for the basement stairs." *Id.* In the instant case, the area of the hallway directly in front of the side door and the descending stairway provides the only landing.

¶ 67    The circuit court in *Alcorn* granted summary judgment because " 'the undisputed facts show Defendant had no duty to warn and no duty to enclose the stairway.' " *Id.* The Third District affirmed following its review of the "three acts of negligence." *Id.* at 6. Only the second act of negligence is pertinent in this case: " 'Defendant negligently permitted a hazardous and dangerous condition to exist, namely, an open and unguarded basement stairway immediately to the left of the doorway, so as to provide a dangerous condition for one entering said doorway ***.' " *Id.* at 7. In regard to this allegation of negligence, the *Alcorn* court noted, "[t]here was no expert testimony to raise any issue of fact as to whether the stairs were situated in such a way as to constitute an unreasonable risk of harm." *Id.* But the court made clear that expert testimony would have aided Alcorn only if the expert could have established that "the configuration of a stairway *** masks or obscures the stairs in a way which prevents the invitee from becoming aware of the open and obvious configuration of the stairway." *Id.* The *Alcorn* court held: "The undisputed facts in this case establish that the stairs were not configured in a manner which masked or obscured them." *Id.* It is fair to infer that short of providing testimony that one could have somehow reconfigured the stairs, an expert could not have saved the negligence claim in *Alcorn*. The *Alcorn* court made this clear in its holding: "The trial court was correct in granting summary judgment as there was

-13-

no duty under this allegation as a matter of law." *Id*.

¶ 68    I submit that the holding in *Alcorn*, under virtually indistinguishable facts, controls the outcome in the case at hand. The appended photograph, depicting the open and obvious descending stairway adjacent to the side door, makes clear that the descending stairs were "just stairs." *Id.* at 6.

¶ 69    Finally, the plaintiff's assertion in his brief that the side door, as he opened it, likely "forced" him down the stairs, proves far more than the plaintiff intends. His fall backwards into the basement stairway makes clear he sought to avoid the sweep of the door as he opened it by attempting to maintain his footing on the five inches of landing, a clear indication that he knew the descending stairway was immediately behind him. His claim that the door may have "forced" him to fall backwards says nothing more than he "forced" himself down the stairway because he controlled the door as he opened it.

¶ 70    Also, the maneuver the plaintiff took to open the side door was not the only one he could have taken. The plaintiff could have placed one foot on the first step descending into the basement to fully avoid the sweep of the door. Or, the plaintiff could have stepped back into the hallway to allow the door to open fully. Either action would have prevented the accident in this case. Simply because the plaintiff did neither cannot mean that the accident occurred because the descending stairway presented an "unreasonably dangerous condition." The accident occurred because the plaintiff attempted to squeeze the door past his body while maintaining his balance on those five inches of landing, the least safe option among the three.

¶ 71    Under virtually indistinguishable facts, my colleagues' decision in this case takes back the words of this court in *Alcorn*: "We are unaware of any authorities that have held that the owner or occupant of a building must provide a certain kind of stairway for persons or be held guilty of negligence. [Citation.] *** The trial court was correct in granting summary judgment as there was no duty under this allegation as a matter of law." *Alcorn*, 185 Ill. App. 3d at 7.

¶ 72    I would remand to the circuit court with directions that judgment notwithstanding the verdict be entered in favor of the defendant.



C00255